IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

ELECTRONICALLY
FILED
JUL 19, 2019
U.S. DISTRICT COURT
Northern District of WV

WILLIAM D. GLOVER and LINDA
K. GLOVER, his wife,
RICHARD A. GLOVER, and CHRISTY L. GLOVER,
his wife, Individually, and on
Behalf of All Others Similarly Situated,

          Plaintiffs,

v.

Case No. 5:19-cv-223 (Stamp)

EQT CORPORATION, a Pennsylvania
corporation; EQT PRODUCTION
COMPANY, a Pennsylvania corporation;
and EQT ENERGY, LLC, a Delaware
limited liability company,

          Defendants.

## COMPLAINT

Come Now, the Plaintiffs, William D. Glover and Linda K. Glover, his wife, Richard A. Glover and Christy L. Glover, his wife, individually, and on behalf of a class of all others similarly situated (collectively "Plaintiffs"), and state and allege as follows for their class action Complaint against EQT Corporation, EQT Production Company and EQT Energy, LLC.

### INTRODUCTION

1. This is a class action brought by Plaintiffs and all others similarly situated for damages incurred by Plaintiffs and other class members for Defendants' failure to pay the required amount of royalties due under oil and gas leases.

2. This action is being brought by Plaintiffs individually and on behalf of all others similarly situated who have not been paid for various hydrocarbons known as natural gas liquids

{00308284-7}

("NGLs") produced and sold by Defendants in connection with oil and gas leases and/or mineral rights held or owned by Plaintiffs and those similarly situated.

## PARTIES

3. Plaintiffs, William D. Glover and Linda K. Glover are residents and citizens of New Martinsville, Wetzel County, West Virginia.

4. Plaintiffs, Richard A. Glover and Christy L. Glover are residents and citizens of New Martinsville, Wetzel County, West Virginia.

5. Defendant, EQT Corporation is a Pennsylvania corporation with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.

6. Defendant, EQT Production Company is a Pennsylvania corporation with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.

7. Defendant, EQT Energy, LLC is a Delaware limited liability company with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.

8. Defendants, EQT Corporation, EQT Production Company, and EQT Energy, LLC are collectively referred to in this Complaint as "EQT". EQT includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns, and their present officers, directors, employees, agents, representatives, and any other person acting on their behalf.

9. At all relevant times herein and as part of its business operations, EQT Corporation owned, operated, controlled and directly participated in the management of EQT Production Company and EQT Energy, LLC.

10. At all relevant times herein, EQT Corporation, EQT Production Company and EQT Energy, LLC maintained common ownership and management and EQT Corporation controlled

and directly participated in the management and operations of EQT Production Company and EQT Energy, LLC to such degree that EQT Production Company and EQT Energy, LLC did not and do not act independently of EQT Corporation.

11. At all relevant times herein, EQT Corporation owned EQT Production Company and/or EQT Energy, LLC and there was and is a unity of ownership, management and interests between EQT Corporation, EQT Production Company and EQT Energy, LLC.

12. At All relevant times herein, EQT Corporation, EQT Production Company and EQT Energy, LLC shared common officers, directors and management.

13. At all relevant times herein: EQT Corporation provided financing for EQT Production Company and/or EQT Energy, LLC; the sole source of capital and/or funding for the business operations of EQT Production Company and EQT Energy, LLC was capital provided by EQT Corporation; EQT Corporation subsidized losses incurred by EQT Production Company and EQT Energy, LLC; EQT Production Company and EQT Energy, LLC conducted nearly all of their business exclusively with EQT Corporation; EQT Corporation considered EQT Production Company and EQT Energy, LLC as its own business segments and groups within EQT Corporation, exclusively to serve EQT Corporation; the profits and losses of EQT Production Company and EQT Energy, LLC are considered to be the profits and losses of EQT Corporation; EQT Corporation controls the boards, directors, officers and management of EQT Production Company and EQT Energy, LLC; and EQT Corporation directly participates in the management of EQT Production Company and EQT Energy, LLC.

14. At all relevant times herein, EQT Corporation, EQT Production Company, and EQT Energy, LLC, were and are the *alter egos* of one another.

15. At all relevant times herein, EQT is and was registered to conduct business in the State of West Virginia and/or conducted business in West Virginia, including Wetzel County, West Virginia.

16. EQT is engaged in the business of producing and selling oil, natural gas, constituents of oil and natural gas, NGLs, fluid hydrocarbons and other hydrocarbons.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2), because the dollar amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and diversity of citizenship exists between one or more members of the proposed class and EQT.

18. Pursuant to 28 U.S. Code § 1391, venue is proper in the United States District Court for the Northern District of West Virginia at Wheeling because a substantial part of the events or omissions giving rise to the claims alleged in this class action Complaint occurred in this judicial district and/or a substantial part of the property that is the subject of the action is located within this judicial district.

## FACTUAL ALLEGATIONS

19. The Marcellus Shale is an oil and gas formation located in, among other states, West Virginia, including Wetzel County West Virginia.

20. The Marcellus Shale contains and/or consists of various hydrocarbons, including constituents or parts that are commonly characterized as natural crude oil, natural gas, NGLs and/or other hydrocarbons.

21. The Marcellus Shale geographic areas which contain higher amounts or percentages of liquid hydrocarbons and/or NGLs are commonly described as "wet gas areas." The

wet gas area includes, but is not limited to Brooke County, Ohio County, Marshall County, Wetzel County, Tyler County, Doddridge County and Ritchie County, West Virginia (hereinafter "WV Wet Gas Area").

22. The West Virginia Department of Environmental Protection, Office of Oil and Gas ("WVDEP OOG"), receives and reviews oil and gas well work applications, and if appropriate, issues permits (in a form defined by the Office of Oil and Gas as a "Well Work Permit") for an operator to drill, complete and produce oil and gas from a well located in the state of West Virginia.

23. Under West Virginia law, W.Va. Code §22-6-1(k), "Oil" is defined as "natural crude oil or petroleum and other hydrocarbons, regardless of gravity, which are produced at the well in liquid form by ordinary production methods and which are not the result of condensation of gas after it leaves the underground reservoirs".

24. Under West Virginia law, W.V. Code § 22-6-1(j), "Gas" is defined as "all natural gas and all other fluid hydrocarbons not defined as oil in [W.V. Code § 22-6-1(k)]".

25. At all relevant times herein, EQT was lessee and/or was the assignee of lessee of thousands of Oil and Gas lease agreements for tracts and/or parcels of land containing Oil and Gas located in the WV Wet Gas Area (hereinafter collectively, "WV Wet Gas Lease" or "Class Leases").

26. In or after 2006, EQT, or its predecessors in title, filed hundreds of applications with the WVDEP OOG to receive well work permits that allowed EQT to drill, complete and produce Oil and Gas in the WV Wet Gas Area and under the Class Leases.

27. Subsequent to 2006, EQT, or its predecessors in title, received hundreds of Well Work Permits that allowed EQT to drill, complete and produce wells for Oil and Gas in the WV Wet Gas Area (collectively, "EQT WV Wet Gas Wells").

28. At all relevant times herein, EQT operated the EQT WV Wet Gas Wells and reported the Oil and Gas production to the WVDEP OOG from each of the EQT WV Wet Gas Wells.

29. On or about August 30, 2014, William D. Glover and Linda K. Glover, his wife, and Richard A. Glover and Christy L. Glover, his wife (collectively, the "Glover Plaintiffs"), as lessors, executed an Oil and Gas lease with Stone Energy Corporation, a Delaware Corporation, as lessee, covering a mineral tract consisting of 53.21 acres situate in Proctor District, Wetzel County West Virginia (the "Glover Lease"). The Glover Lease is a Class Lease and the surface area of mineral tract covered in the Glover Lease is more particularly shown on the tax maps of Wetzel County in Proctor District Tax Map #1 as Parcels #22 and 23.1.

30. Pursuant to the terms of the Glover Lease, Stone Energy leased "all of the oil, gas, methane, coal bed methane, coal mine methane, and hydrocarbons and all of the constituents of any of the foregoing (collectively, 'Oil and Gas')."

31. Pursuant to the terms of the Glover Lease, "Oil" includes "all forms of liquid hydrocarbons" and "Gas" includes "helium, carbon dioxide, gaseous sulphur compounds, coalbed methane and any other commercial gases."

32. Pursuant to the terms of the Glover Lease, the Lessee was to pay to Lessor "free of drilling, completing, equipping and operating costs, the equivalent of eighteen and three-fourths percent (18.75%) part of the gross proceeds received from the sale of Oil and Gas produced, saved, and sold from the Leased Premises, or lands pooled therewith." The Glover Lease defines "gross proceeds" as, "the gross amount realized from a sale of the Oil and Gas or its components to a *bona fide* third party purchaser, without deducting gathering, transportation, compression, processing, fuel and other services for Lessor's Oil and Gas either on its own or through one or

more wholly owned subsidiaries of Lessee, or the costs and/or expenses of providing such services, including shrinkage or line loss, if any."

33. Subsequent to the execution of the Glover Lease, EQT acquired all of Stone Energy Corporation's rights title and interest in and to the Glover Lease.

34. At all relevant times herein, Plaintiffs and the Class who they represent, are lessors and/or owners of Class Leases and/or Oil and Gas mineral interests who own the right to receive royalties from the production and/or sale of Oil and Gas produced, saved, sold and/or derived pursuant to Class Leases.

35. Upon information and belief, there are more than 2,000 Class Leases.

36. Upon information and belief, the Glover Lease and the Class Leases contain the same and/or substantially similar language for the payment of royalties from the production and/or sale of Oil, Gas, NGLs, other fluid hydrocarbons and/or constituents or parts thereof.

37. EQT has placed notices titled "DECLARATION – NOTICE OF UNITIZATION" on record in the offices of the County Clerk of the County Commission for Wetzel County and other Counties in which the property subject to the Class Leases and/or EQT WV Wet Gas Wells are located, pooling certain Class Leases, and have included allocation areas described in such documents (collectively, "Wet Gas Declarations").

38. Upon information and belief, a purpose of the Wet Gas Declarations is to provide public notice that EQT intends to allocate the production, sale and/or royalties for the respective EQT Wet Gas Wells in the proportions described therein.

39. Upon information and belief, the Class Leases are included in one or more Wet Gas Declarations.

40. The Glover Plaintiffs have received royalty payments from EQT for the Glover Lease. Accompanying each royalty payment is a report titled Remittance Statement from EQT Production, which usually contains information related to the royalties paid, production and revenue accounting for the Oil and Gas produced and sold under the Glover Lease.

41. Upon information and belief, each member of the Class has received similar Remittance Statements as those received by the Glover Plaintiffs accompanying their royalty payments (collectively, "Class Remittance Statements").

42. The Class Remittance Statements do not indicate the Glover Plaintiffs and/or the Class have been paid royalties for the production and/or sale of NGLs as required by the Glover Lease and the Class Leases.

## CLASS ACTION ALLEGATIONS

43. Plaintiff and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

44. Plaintiffs bring this action on behalf of themselves and the WV Class of similarly situated persons and entities pursuant to Fed. R. Civ. P. 23(b)(3), consisting of persons and entities to whom EQT has paid or has an obligation to pay royalties under the WV Class Leases on Oil and Gas produced from the EQT WV Wet Gas Wells and have not been paid royalties for NGLs in accordance with the WV Class Leases in breach of EQT's obligations under the Class Leases and/or in violation of EQT's statutory duty to timely tender royalty payments due and owing for NGL's pursuant to West Virginia Code § 37C-1-3 (the "Class").

45. Excluded from the Class are: a) any claims previously asserted in prior cases in which such claims were determined by final judgment and/or settled by final order approving settlement at the time of this Complaint, including but not limited to those claims encompassed by

the allegations and class definition in *Kay Co., LLC v. EQT Prod. Co.*, No. 1:13-CV-151, 2017 WL 6403031 (N.D.W. Va. July 11, 2017); b) any oil and gas interest owned by any federal, state or municipal governmental entity; c) any owner of a working interest in the EQT WV Wet Gas Wells; d) any oil and gas interest owned by any Defendant; and e) any claims brought pursuant to a Class Lease which contain a binding arbitration provision.

46. The Class is so numerous as to make it impractical to bring all before the court thereby satisfying Fed. R. Civ. P. 23(a)(1).

47. Plaintiffs have claims against EQT that are typical of the claims of the Class members because: The Glover Lease, the Grimes Lease and the Class Leases contain the same and/or substantially similar language for the payment of royalties from the production and/or sale of Oil, Gas, NGLs, other hydrocarbons and/or constituents or parts thereof; EQT has breached the same and/or substantially similar contractual and statutory duties owed Plaintiffs and the Class by failing to properly pay royalties for the production and/or sale of NGLs and failing to timely tender royalty payments due and owing for NGLs pursuant to West Virginia Code § 37C-1-3; and Plaintiffs will adequately protect the interests of the Class with respect to the appropriate common issues of fact and law.

48. Plaintiffs have retained counsel who are competent to prosecute this action for and on behalf of Plaintiffs and the Class.

49. The prosecution of this civil action by Plaintiffs and all Class members in separate actions: (1) would create a risk of inconsistent or varying adjudications with respect to individual members of the Class; (2) could, as a practical matter, be dispositive of interests of other members of the Class who were not parties to the separate actions; and (3) may substantially impair or impede the Plaintiffs' ability to protect their interests.

50. EQT has acted on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

51. There are common questions of law and fact to the members of the Class that predominate over any questions affecting only individual members, including, but not limited to:

    A. Whether EQT is contractually obligated to pay Plaintiffs and the Class royalties on NGLs produced and/or sold as required by the Class Leases;

    B. Whether EQT is contractually obligated to pay Plaintiffs and the Class royalties on NGLs produced and/or sold based on a sale to an unaffiliated and unrelated third party;

    C. Whether EQT breached its contractual obligation to pay royalties for the production and/or sale of NGLs to Plaintiffs and the Class;

    D. Whether EQT had a duty pursuant to W. Va. Code § 37C-1-3 to timely tender required royalty payments to Plaintiffs and the Class for the production and/or sale of NGLs;

    E. Whether EQT violated W. Va. Code § 37C-1-3 by failing to timely tender royalty payments to Plaintiffs and the Class in connection with the production and/or sale of NGLs;

    F. Whether EQT calculated and paid royalties on NGLS in accordance with the WV Class Leases; and

    G. Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

52. Plaintiffs will fairly and adequately protect the interests of the Class because the interests of Plaintiffs as Class representatives are consistent with those of the other Class members.

53. Prosecution of a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

54. The interests of members of the Class, as to common questions of law and fact, in individually controlling the prosecution of separate actions do not outweigh the benefits of a class action as to those issues.

55. Any difficulties in management of this case as a class action are outweighed by the benefits of a class action with respect to disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action.

56. Plaintiffs are unaware of any other class actions filed in the last three years with similar factual allegations against EQT.

## COUNT I
## BREACH OF CONTRACT

57. Plaintiff and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

58. The Glover Plaintiffs and the Class are or were owners of Oil and Gas leases and/or mineral interests, royalty interests, and/or other interests in the Class Leases.

59. EQT is the owner of a working interest of the Glover Lease and the Class Leases, and a producer of Oil, Gas, NGLs, fluid and other hydrocarbons and constituents thereof.

60. Plaintiffs and the Class have contractual rights and EQT has contractual obligations associated with the Glover Lease and the Class Leases such that Plaintiffs and the Class are contractually entitled to receive, among other valuable consideration, royalties from the production and/or sale of NGLs based upon a sale of NGLs to an uncontrolled, unaffiliated and unrelated third party.

61. EQT has breached the Glover Lease and the Class Leases by failing to pay Plaintiffs and the Class their required share of royalties for the production and/or sale of NGLs based on the sale of NGLs to an unaffiliated and unrelated third party.

62. As a direct and proximate result of the actions of the Defendants, as aforesaid, the Plaintiffs and the Class, have suffered damages in the form of substantial lost royalties and revenues, and interest, as well as other damages.

## COUNT II
## STATUTORY VIOLATION OF WEST VIRGINIA CODE § 37C-1-3

63. Plaintiff and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

64. W. Va. Code § 37C-1-3 provides in pertinent part, "all regular production payments from horizontal wells due and owing to an interest owner shall be tendered in a timely manner, which shall not exceed 120 days from the first date of sale of oil, natural gas, or natural gas liquids is realized and within 60 days thereafter for each additional sale, unless such failure to remit is due to lack of record title in the interest owner, a legal dispute concerning the interest a missing or unlocatable owner of the interest, or due to conditions otherwise specified in this article."

65. EQT's actions, as aforesaid, violated W. Va. Code § 37C-1-3 by failing to pay the Glover Plaintiffs and the Class in full for payments due and owed them as interest owners for NGLs produced and/or sold from horizontal wells within 120 days of their first sale and/or within 60 days of subsequent sales.

66. EQT's actions, as aforesaid, violated W.Va. Code § 37C-1-3 by failing to make timely payments and entitles Plaintiffs to a mandatory interest penalty to be set at the prime rate plus an additional two percent until such payments are made, compounded quarterly, pursuant to W. Va. Code §37C-1-3.

67. As a direct and proximate result of the actions of the Defendants, as aforesaid, the Plaintiffs and the Class which they represent, have suffered damages in the form of substantial lost royalties, revenues, and interest, as well as other damages.

**WHEREFORE,** Plaintiffs William D. Glover and Linda K. Glover, his wife, and Richard A. Glover and Christy L. Glover, his wife, and on behalf of all others similarly situated, requests the following relief:

    A. An Order from this Court ordering that this is an appropriate action to be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and finding that Plaintiffs and their counsel are appropriate representatives and appropriate counsel for the Class, and that this action shall proceed as a class action on all common issues of law and fact;

    B. A judgement against EQT Corporation, EQT Production Company and/or EQT Energy LLC, that said defendants are liable to Plaintiffs and the Class, jointly and severally, for all damages allowed by law in an amount to be determined by a jury, according to the laws of the State of West Virginia;

    C. An Order reserving the individual damage claims of Plaintiff and each member of the Class that may develop for separate resolution in this action or in any other individual, consolidated, or class action;

    D. Pre-judgment and post-judgment interest as provided under the law;

    E. Costs and attorney fees expended in the prosecution of this matter;

    F. All general, special, and equitable relief to which Plaintiff and the members of the Class are entitled by law; and

    G. Any and all further relief as a court and/or jury deem just and proper.

The minimum jurisdictional amount established for filing this action is satisfied.

<u>**PLAINTIFFS DEMAND A TRIAL BY JURY.**</u>

Respectfully Submitted,

**WILLIAM D. GLOVER and LINDA K. GLOVER, his wife, RICHARD A. GLOVER, and CHRISTY L. GLOVER, his wife, Individually, and on Behalf of All Others Similarly Situated,** *Plaintiffs*

By: _____
Of Counsel

Robert J. Fitzsimmons (W.Va. Bar #9656)
Mark Colantonio (W.Va. Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, West Virginia 26003
Phone: 304-277-1700
Fax: 304-277-1705
Email: rocky@fitzsimmonsfirm.com
Email: mark@fitzsimmonsfirm.com


Eric M. Gordon (WV Bar# 6897)
Berry, Kessler, Crutchfield, Taylor & Gordon
514 Seventh Street
Moundsville, West Virginia 26041
Phone: (304) 845-2580
Fax: (304) 845-9055
Email: egordon@bkctg.com