**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT WHEELING**

**WILLIAM D. GLOVER and LINDA**
**K. GLOVER, his wife;**
**RICHARD A. GLOVER, and CHRISTY L. GLOVER,**
**his wife; and**
**GOSHORN RIDGE, LLC,**
 **Individually, and on**
**Behalf of All Others Similarly Situated,**

            **Plaintiffs,**

**v.**                                             **Case No. _____**

**EQT CORPORATION, a Pennsylvania**
**corporation; EQT PRODUCTION**
**COMPANY, a Pennsylvania corporation;**
**EQT ENERGY, LLC, a Delaware**
**limited liability company; EQT ENERGY II, LLC,**
**a Pennsylvania limited liability company;**
**EQT GATHERING, LLC, a Delaware limited**
**Liability company; and EQT MIDSTREAM**
**PARTNERS, LP, a Delaware limited partnership;**
                    **Defendants.**

## <u>CONSOLIDATED COMPLAINT</u>

Come Now, the Plaintiffs, William D. Glover and Linda K. Glover, his wife, Richard A.

Glover and Christy L. Glover, his wife, and Goshorn Ridge, LLC,  individually, and on behalf of

a class of all others similarly situated (collectively "Plaintiffs"), and for their class action

Complaint against EQT Corporation, EQT Production Company, EQT Energy, LLC, EQT Energy

II, LLC, EQT Gathering, LLC and EQT Midstream Partners, LP (collectively "Defendants") aver

and state as follows:

1.      This action is brought for individual claims and pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action on behalf of the named plaintiffs and on behalf of all West Virginia residents and others who have entered into or who are parties or beneficiaries of oil and gas leases within the state of West Virginia with defendants or with others who have assigned the duties and responsibilities of the leases to defendants from whom defendants have wrongfully failed to pay plaintiffs and the class for the full value of hydrocarbons which were produced from their leases and wells, processed and sold by defendants and/or which defendants have wrongfully taken deductions from the NGLs.  The period for recovery under this civil action includes the period during which the NGLs were produced and sold from the plaintiffs and the class leases by defendants until the present.

## **PARTIES**

2.      Plaintiffs, William D. Glover and Linda K. Glover are residents and citizens of New Martinsville, Wetzel County, West Virginia.

3.      Plaintiffs, Richard A. Glover and Christy L. Glover are residents and citizens of New Martinsville, Wetzel County, West Virginia.

4.      Plaintiff, Goshorn Ridge, LLC, ("Goshorn Ridge") is a West Virginia limited liability company with its principal place of business in Wheeling, Ohio County, West Virginia.

5.      Defendant Trans Energy, Inc. is a foreign corporation organized under the laws of Nevada, with its principal place of business at 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania, 15222, and is authorized to conduct business in West Virginia.  It is in the business of oil and gas extraction.

6.      Defendants Trans Energy, Inc., Republic Energy Ventures, LLC, and Republic Energy Operating, LLC were engaged in a joint venture to carry out oil and gas extraction

operations in West Virginia,  where they combined their money, assets, skill, and knowledge to promote and conduct such operations, as evidenced by the Goshorn Ridge Lease attached as Exhibit 2.

7.    Trans Energy, Inc., Republic Energy Ventures, LLC, and Republic Energy Operating, LLC, were engaged in a joint venture with one another and were otherwise acting not only on their own behalf but as agents of one another so as to render them liable for the acts and/or omissions of one another.

8.    Defendant, EQT Corporation is a Pennsylvania corporation with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.  EQT Corporation is and was, at all relevant times herein, engaged in the business of operating oil and gas leases and producing, marketing and/or selling oil, natural gas, constituents of oil and natural gas, NGLs, fluid hydrocarbons and other hydrocarbons.

9.    EQT Corporation is a publicly traded corporation which, *inter alia*, directly and/or indirectly, by and through its subsidiaries and partners, enters into leases and/or contractual arrangements to receive monetary benefits from lessors, such as the Plaintiffs and/or acquires leasehold interests by assignment or otherwise of oil and/or natural gas rights within West Virginia, and elsewhere, and thereby produces, gathers, transports and represents that it sells the same at "points of sale" which is on interstate natural gas pipelines at published index prices.

10.    EQT Corporation operates its oil and gas business and takes deductions from royalties due the Plaintiffs, by and through the use of subsidiaries, including the Defendants, which are mere departments and/or business segments of EQT Corporation.

11.    Defendant, EQT Production Company ("EQT Production") is a Pennsylvania corporation with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.

EQT Production is and was, at all relevant times herein, engaged in the business of oil and gas extraction, production and sales.  EQT Production is authorized to conduct business in West Virginia.

12.     Defendant, EQT Energy, LLC and/or EQT Energy II, LLC (collectively "EQT Energy") is a Delaware limited liability company with its principle place of business in Pittsburgh, Allegheny County, Pennsylvania.  EQT Energy is and was, at all relevant times herein, engaged in the business of purchasing, selling, marketing and the wholesale trade of petroleum and petroleum products.  EQT Energy is authorized to conduct business in West Virginia.

13.     Defendant EQT Gathering, LLC, ("EQT Gathering") is a Delaware limited liability company with its principal place of business in Pittsburgh, Allegheny County, Pennsylvania.  EQT Gathering is and was, at all relevant times herein, engaged in the business of pipeline transportation and gathering of natural gas.  EQT Gathering is authorized to conduct business in West Virginia.  EQT Gathering also does business as EQT Midstream.

14.     EQT Midstream Partners, LP, ("EQT Midstream") is a Delaware limited partnership with its principal place of business in Pittsburgh, Allegheny County, Pennsylvania.  EQT Midstream is and was, at all relevant times herein, engaged in the business of gathering and transporting natural gas.  EQT Midstream is authorized to conduct business in West Virginia.  EQT Midstream Services, LLC is the general partner of EQT Midstream.

15.     At all relevant timers herein, Defendants engaged in various non arms-length transactions with sister companies in the production, marketing and sale of gas and/or NGLs for the purpose of concealing the true value and/or improperly depriving the Plaintiffs of the royalties due under their leases, including but not limited to: EQT Production holds the leases and produces the oil and gas from leases; EQT Gathering and EQT Midstream provide for the gathering and transmission of gas;  EQT Energy sells the gas and enters into contracts with EQT Production., EQT Gathering and EQT Midstream to purchase

gas;  EQT Energy pays EQT Production for the gas and EQT Production pays royalties to lessors; EQT Energy, however, pays EQT Production a price that credits EQT Gathering and the Midstream Companies for costs incurred in the gathering, processing and transmission of gas.

16.     Defendants, EQT Production, EQT Energy, EQT Gathering and EQT Midstream are collectively referred to in this Complaint as the "EQT Affiliates".

17.     Defendants EQT Corporation and the EQT Affiliates shall be collectively referred to in this Complaint as "EQT".  EQT includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns, and their present officers, directors, employees, agents, representatives, and any other person acting on their behalf.

18.     Upon information and belief, and at all relevant times herein:

a.     EQT Corporation owned all of the stock of the EQT Affiliates.

b.     EQT Corporation had common officers and/or directors with the EQT Affiliates;

c.     EQT Corporation financed and/or controlled the finances of the EQT Affiliates including their loans;

d.     EQT Corporation, acting by and through its departments' other subsidiaries, which it owns, operates and controls, including the EQT Affiliates, arranged for payment of or security for the EQT Affiliates' indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries;

e.     Except for sale of oil and gas and its products, the EQT Affiliates do business primarily with EQT Corporation and its other subsidiaries;

f.     The EQT Affiliates' assets are under the control of EQT Corporation;

g.     EQT Corporation publicly refers to its subsidiaries as business segments and states that it conducts its business, which includes the EQT Affiliates, through business segments;

h.   Upon information and belief, the officers and/or directors of the EQT Affiliates take direction from EQT Corporation for the interest of EQT Corporation;

i.   EQT Corporation manages its daily operations through the EQT Affiliates and their subsidiaries;

j.   EQT Corporation's assets consist primarily of the assets of its subsidiaries, including the EQT Affiliates; and

k.   EQT Corporation finances its subsidiaries, including the EQT Affiliates, and guarantees repayment of its subsidiaries' debt, including the EQT Affiliates.

19.   At all times complained of, EQT Corporation owned, operated and controlled the EQT Affiliates, the same as if the EQT Affiliates were departments of EQT Corporation, and EQT Corporation was and is the alter ego of the EQT Affiliates.

20.   At all times complained of, the EQT Affiliates were acting for and on behalf of EQT Corporation, and EQT Corporation is responsible for the acts and conduct of the EQT Affiliates the same as if EQT Corporation did the acts complained of.

21.   At all times complained of, EQT Corporation was acting for and on its own behalf and by and through its agents, servants and employees and also by and through the EQT Affiliates.

22.   At all relevant times herein, EQT Corporation was engaged in a joint venture with the EQT Affiliates and other subsidiaries whereby EQT combined their money, assets, skill and knowledge to promote and conduct the operations to lease, explore, develop, produce, market, transport and sell oil and gas from real property interests located in West Virginia, including real property interests owned by the Plaintiffs.

23.   At all relevant times herein, EQT Corporation, EQT Production Company, EQT Energy, LLC, EQT Energy II, LLC, EQT Gathering, LLC and EQT Midstream Partner, LP were and are the *alter egos* of one another.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2), because the dollar amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and diversity of citizenship exists between one or more members of the proposed class and EQT.

25.     This Court has jurisdiction over the individual claims in this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and because the action seeks damages in excess of $75,000.00.

26.     The real property which is the subject of this action is situated in Marshall County, West Virginia and Wetzel County, West Virginia.

27.     Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of West Virginia at Wheeling because a substantial part of the events or omissions giving rise to the claims alleged in this class action Complaint occurred in this judicial district and/or a substantial part of the property that is the subject of the action is located within this judicial district.

## FACTUAL ALLEGATIONS

28.     The Marcellus Shale is an oil and gas formation located in, among other states, West Virginia, including Marshall County, West Virginia and Wetzel County, West Virginia.

29.     The Marcellus Shale contains and/or consists of various hydrocarbons, including constituents or parts that are commonly characterized as natural crude oil, natural gas, NGLs and/or other hydrocarbons.

30.     The Marcellus Shale geographic areas which contain higher amounts or percentages of liquid hydrocarbons and/or NGLs are commonly described as "wet gas areas." The wet gas area includes, but is not limited to Brooke County, Ohio County, Marshall County, Wetzel County, Tyler County, Doddridge County and Ritchie County, West Virginia (hereinafter "WV Wet Gas Area").

31.     The West Virginia Department of Environmental Protection, Office of Oil and Gas ("WVDEP OOG"), receives and reviews oil and gas well work applications, and if appropriate, issues permits (in a form defined by the Office of Oil and Gas as a "Well Work Permit") for an operator to drill, complete and produce oil and gas from a well located in the state of West Virginia.

32.     Under West Virginia law, W.Va. Code §22-6-1(k), "Oil" is defined as "natural crude oil or petroleum and other hydrocarbons, regardless of gravity, which are produced at the well in liquid form by ordinary production methods and which are not the result of condensation of gas after it leaves the underground reservoirs".

33.     Under West Virginia law, W.V. Code § 22-6-1(j), "Gas" is defined as "all natural gas and all other fluid hydrocarbons not defined as oil in [W.V. Code § 22-6-1(k)]".

34.     At all relevant times herein, EQT was lessee and/or was the assignee of lessee of thousands of Oil and Gas lease agreements for tracts and/or parcels of land containing Oil and Gas located in the WV Wet Gas Area (hereinafter collectively, "WV Wet Gas Lease" or "Class Leases").

35.     In or after 2006, EQT, or its predecessors in title, filed hundreds of applications with the WVDEP OOG to receive well work permits that allowed EQT to drill, complete and produce Oil and Gas in the WV Wet Gas Area and under the Class Leases.

36.     Subsequent to 2006, EQT, or its predecessors in title, received hundreds of Well Work Permits that allowed EQT to drill, complete and produce wells for Oil and Gas in the WV Wet Gas Area (collectively, "EQT WV Wet Gas Wells").

37.     At all relevant times herein, EQT operated the EQT WV Wet Gas Wells and reported the Oil and Gas production to the WVDEP OOG from each of the EQT WV Wet Gas Wells.

<u>GLOVER PLAINTIFFS</u>

38.     On or about August 30, 2014, William D. Glover and Linda K. Glover, his wife, and Richard A. Glover and Christy L. Glover, his wife (collectively, the "Glover Plaintiffs"), as lessors, executed an Oil and Gas lease with Stone Energy Corporation, a Delaware Corporation, as lessee, covering a mineral tract consisting of 53.21 acres situate in Proctor District, Wetzel County West Virginia (the "Glover Lease" attached as Exhibit 1). The Glover Lease is a Class Lease and the surface area of mineral tract covered in the Glover Lease is more particularly shown on the tax maps of Wetzel County in Proctor District Tax Map #1 as Parcels #22 and 23.1.

39.     Pursuant to the terms of the Glover Lease, Stone Energy leased "all of the oil, gas, methane, coal bed methane, coal mine methane, and hydrocarbons and all of the constituents of any of the foregoing (collectively, 'Oil and Gas')."

40.     Pursuant to the terms of the Glover Lease, "Oil" includes "all forms of liquid hydrocarbons" and "Gas" includes "helium, carbon dioxide, gaseous sulphur compounds, coalbed methane and any other commercial gases."

41.     Pursuant to the terms of the Glover Lease, the Lessee was to pay to Lessor "free of drilling, completing, equipping and operating costs, the equivalent of eighteen and three-fourths percent (18.75%) part of the gross proceeds received from the sale of Oil and Gas produced, saved,

and sold from the Leased Premises, or lands pooled therewith." The Glover Lease defines "gross

proceeds" as, "the gross amount realized from  a sale of the Oil and Gas or its components to a

*bona fide* third party purchaser, without deducting gathering, transportation, compression,

processing, fuel and other services for Lessor's Oil and Gas either on its own or through one or

more wholly owned subsidiaries of Lessee, or the costs and/or expenses of providing such services,

including shrinkage or line loss, if any."

42.     Subsequent to the execution of the Glover Lease, EQT acquired all of Stone Energy

Corporation's rights title and interest in and to the Glover Lease.

<u>GOSHORN RIDGE, LLC</u>

43.     On November 11, 2010, Plaintiff Goshorn Ridge entered into a "Paid Up Oil and

Gas Lease" ("Goshorn Ridge Lease") with Trans Energy, Inc. and Republic Energy Ventures,

LLC, for the lease of 937 net mineral acres property in Marshall County, West Virginia.  See

Exhibit 2.

44.     At all times complained of herein to the present, Trans Energy, Inc., had the duties

and responsibilities to comply with the lease terms and conditions of the Goshorn Ridge Lease,

attached as Exhibit 2.

45.     Pursuant to the terms of the Goshorn Ridge Lease, 50% of the minerals were leased

jointly to Trans Energy, Inc., and 50% were leased to Republic Ventures, LLC.

46.     The royalty clause in the lease states:

2.      Lessee covenants and agrees to the credit of Lessor, its heirs or assigns, a
royalty of twenty percent (20%) market value of oil (in barrels) and gas (as defined
in dekatherms ((1,000 btu per mcf)) both as measured at the wellhead and other
hydrocarbon substances produced and saved from the leased premises and paid by
third parties.  Such payments shall be made within 60 days of the production month
or 10 business days of receipt by Lessee whichever is earlier.  The royalty paid
hereunder shall be based on gross proceeds received by Lessee without deductions

for expenses incurred by Lessee, including but not limited to expenses to produce, separate, compress, or transport produced volumes to the point of sale.  The first royalty payment for each well shall be paid within 120 days from the first day of actual production of oil or gas.  Royalty reports shall comply with the minimum standards as required by the State of Texas and shall include items 1-12 on the attached Exhibit "A".

47.   The Exhibit "A" regarding royalty reporting reads states:

### MINIMUM ROYALTY REPORTING **

Items to be included on the royalty check stub or an attachment to the royalty payment.

1.   Identifying name(s) and number(s) of the lease, Lessors (payees), property, and API number for each well.

2.   The month and year during which the production and sales occurred for which payment is being made.

3.   The total number of barrels, MCF and MMBTU, and gallons of non-crude oil hydrocarbons sold.

4.   The price per barrel or MCF and MMBTU and per gallon for liquid non-crude oil hydrocarbons sold.

5.   The total amount of state severance, ad valorem, and other production taxes paid.

6.   The amount on any other taxes paid on the owners' interests.

7.   An itemization of any other deductions or adjustments in terms of both dollars and quantitative amounts, and a detailed explanation in laymen's terms, of each as they were applied to the Lessors' royalty payment.

8.   The gross and net value of sales before and after deductions.

9.   The owners' interests, expressed as a decimal, in sales from the lease, property, and individual wells.

10.   The owners' share of the total value of sales before any deductions.

11.     The owners' share of the sales value less deductions.

12.     An address and telephone contact number where additional information may be obtained and questions answered.  (If a royalty owner requests information via certified mail, a response must likewise be made by certified mail within thirty (30) days of receipt of the request.)

Sample royalty statement to follow.

**Lessee will provide copies of Marketing Agreements and/or Transportation Agreements or will provide access to them if requested by Lessor.  Lessee will provide 24/7 secure web access to real-time gas flow meter reading.

48.     The Goshorn Ridge Lease also required the Lessees to comply with the following drilling schedule:

| Well Number | Month/Year |
| --- | --- |
| 1, 2 | Back to back by December 31, 2011* |
| 3 | June 30, 2013 |
| 4 | December 31, 2015 |
| 5 | December 31, 2016 |

*       *Lessee agrees to drill and complete two wells by December 31, 2011.  Lessee will drill both wells back to back.  Lessees hope to drill these wells in the first quarter of 2011 with the Patterson Rig 163 but depending on timing (of signing, permitting, coal issues, pad site building) this might be delayed to the second or third quarter of 2011.*

(emphasis added).

49.     On November 28, 2011, the Lease was amended to replace the language italicized in Paragraph No. 28 above to extend the date for the drilling and completion of the initial two wells to not later than March 31, 2012. *See* **Exhibit 2.**  All other terms of the original lease "remain in full force and effect."

50.     The Lease was amended again in 2013 to allow for additional time to drill and complete the well that was to be completed by June 30, 2013 and to allow for the temporary shut in of two wells previously drilled.  No other terms of the original lease were amended.

51.     On or about October 2016, EQT entered into a merger with Trans Energy.

52.     On or about October 2016, EQT entered into purchase agreement with Republic Energy Ventures, LLC, and/or Republic Energy Operating, LLC.

53.     Pursuant to the merger and purchase agreement between and among Trans Energy, Republic Energy and EQT on or about October 2016, EQT was assigned all rights and title to the leasehold estate of Goshorn Ridge's land in Marshall County, along with the liability to assume the responsibility for payment for all terms and conditions under the lease, including payment of all royalty due, for providing Goshorn Ridge with accounting statements as set forth in the lease, and not taking deductions from the 20% royalty.

54.     Through the merger and purchase agreement with Trans Energy and Republic, EQT undertook and assumed Trans Energy's duty to accurately pay royalties under the Goshorn Ridge Lease and other acquired oil and gas leases from Republic and Trans Energy and therefore the surviving corporation, EQT, is liable to Goshorn Ridge and the class for the acts and conduct of Trans Energy..

55.     EQT paid $513 million to Trans Energy Inc. and its joint venture partner Republic Energy for 42,600 acres and 42 million cubic feet per day of natural gas production in West Virginia as well as a tender offer worth $3.58 a share for outstanding shares of Trans Energy in a merger agreement that made Trans Energy a wholly owned subsidiary of EQT.

56.     The Goshorn Ridge Lease requires defendants and each of them to pay Goshorn Ridge royalty without any deductions.  Contrary to that agreement, defendants have taken

deductions from Goshorn Ridge's royalty for costs of processing, taxes and volume and, otherwise, have not paid Goshorn Ridge for the full amount of royalty required by the lease.

57.     After EQT purchased Republic and merged with Trans Energy, EQT wrongfully stopped paying Goshorn Ridge for the natural gas liquids which were part of the gas produced from Goshorn Ridge's property.

58.     EQT wrongfully claims that it pays for the natural gas liquid products which are produced from Goshorn Ridge's, Glover's and the class' property by paying plaintiffs for the gas by paying on the BTU of gas produced and sold and that it has no obligation to pay more than the BTU value of the gas even though it processes the liquids and sells them as hydrocarbons.

59.     The Goshorn Ridge Lease provides for the lessee to pay for "market value" of "other hydrocarbon substances" based on the "gross proceeds" as received by Lessee without deductions for expenses" which specifically requires EQT to pay Goshorn Ridge for the NGL products which are "other hydrocarbon substances."

60.     EQT therefore is wrongfully taking Goshorn Ridge's natural gas and the other hydrocarbons without complying with the lease.

61.     Defendants have intentionally failed and refused to pay royalties to Goshorn Ridge at a rate calculated on the fair value of the natural gas produced from the 4 wells on the lease.

<u>JOINT FACTUAL ALLEGATIONS</u>

62.     At all relevant times herein, Plaintiffs and the Class who they represent, are lessors and/or owners of Class Leases and/or Oil and Gas mineral interests who own the right to receive royalties from the production and/or sale of Oil and Gas produced, saved, sold and/or derived pursuant to Class Leases.

63.     Additionally, at all times complained of herein to the present, EQT and all of its subsidiaries and affiliated companies, each jointly and severally had the duties and responsibilities to Plaintiffs to comply with the lease terms and conditions and to pay Plaintiffs the correct royalties pursuant to the Glover Lease and Goshorn Ridge Lease.

64.     Upon information and belief, there are more than 2,000 Class Leases.

65.     There exists thousands of lessors, like plaintiffs in this case, who own oil and gas estates which include oil and gas which contains substantial amounts of valuable products referred to as hydrocarbon products which are also referred to as NGLs.  These products are also referred to as liquids, gas and other products, other substances, constituents and other such names, all of which require defendants to pay the plaintiffs and the class for hydrocarbons.

66.     The gas underlying plaintiffs' property and the class which plaintiffs seek to represent are entitled to be fully paid for the "hydrocarbons" at the percent royalty required by each of their leases.

67.     Defendants have not paid plaintiffs and the class for all the moneys owed for hydrocarbon products produced from their wells and continue to not pay for same.

68.     EQT has placed notices titled "DECLARATION – NOTICE OF UNITIZATION" on record in the offices of the County Clerk of the County Commission for Marshall County, Wetzel County and other Counties in which the property subject to the Class Leases and/or EQT WV Wet Gas Wells are located, pooling certain Class Leases, and have included allocation areas described in such documents (collectively, "Wet Gas Declarations").

69.     Upon information and belief, a purpose of the Wet Gas Declarations is to provide public notice that EQT intends to allocate the production, sale and/or royalties for the respective EQT Wet Gas Wells in the proportions described therein.

70.     Upon information and belief, the Class Leases are included in one or more Wet Gas Declarations.

71.     The Plaintiffs have received royalty payments from EQT for the Glover Lease and Goshorn Ridge Lease. Accompanying each royalty payment is a report titled Remittance Statement from EQT Production, which usually contains information related to the royalties paid, production and revenue accounting for the Oil and Gas produced and sold under the Glover Lease and Goshorn Ridge Lease, respectively.

72.     Upon information and belief, each member of the Class has received similar Remittance Statements as those received by Plaintiffs accompanying their royalty payments (collectively, "Class Remittance Statements").

73.     The Class Remittance Statements do not indicate the Plaintiffs and/or the Class have been paid royalties for the production and/or sale of NGLs as required by the Glover Lease, the Goshorn Ridge Lease and the Class Leases.

74.     Plaintiffs and the class have been damaged as a result of defendants' intentional and knowing failure to pay them the full amount for NGLs and/or by the taking of deductions with respect to NGLs when the lease does not permit deductions.

75.     Defendants intentionally, knowingly, wrongfully and unlawfully claimed that they were paying plaintiffs and the class the full amount they were due, if anything, for NGLs in the gas produced from plaintiffs' leases and wells.

76.     All defendants are liable to plaintiffs for the royalty due to plaintiffs.

77.     Defendants have the responsibility to account for Plaintiffs' oil and/or gas mineral interest, to comply with the lease terms and conditions of the Plaintiffs' leases and to pay Plaintiffs all moneys due and owing to the Plaintiffs.

78.     Defendants have an affirmative duty to pay to Plaintiffs and the class they seek to represent the true and correct royalty due them, by virtue of the Lease agreements and/or by virtue of the contractual duty of good faith and fair dealing in all contracts and by virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes the duty of handling the sales and accounting functions of the parties.

79.     Defendants intentionally, maliciously and fraudulently violated their contractual duty to plaintiffs and the class.

80.     Defendants knew when they represented that they were paying the full amount due to plaintiffs and the class for NGLs, that defendants' methodology did not fully compensate plaintiffs and the class for the full amount owed to them.

81.     Defendants undertook a design and plan to avoid payment to lessors, like plaintiffs, all of the royalty due them by establishing various subsidiaries for the purpose of selling its hydrocarbons and not pay plaintiffs for the full value thereof and charging off to lessors the expenses of producing the hydrocarbons which the law of West Virginia does not allow unless the lease specifically provides for the same and then only when the amounts deducted are reasonable and actually incurred.

82.     Defendants concealed, suppressed, and omitted material facts with intent that Plaintiffs and the class would rely upon the same in connection with the calculation of Plaintiffs' royalties and deductions therefrom.

83.     Did defendants fraudulently and unlawfully conceal from plaintiffs and the class that their manner and method of paying plaintiffs and the class for hydrocarbon products produced from plaintiffs' leasehold estates did not fully satisfy defendants' contractual obligations under their leases?

84.     Plaintiffs relied upon Defendants to truly, accurately, and properly carry out Defendants' contractual and fiduciary duties and responsibilities and to account to Plaintiffs and the class for payments due to Plaintiffs and for any material deductions or reductions in royalty.

85.     As a result of the aforesaid conduct of Defendants, Plaintiffs and the class were damaged in that they were deprived of and are owed royalty payments from Defendants and are owed interest from said deficiencies in said royalty payments.

86.     The acts and conduct of Defendants were willful and wanton and in utter disregard of Plaintiffs' and the class' rights.

87.     At all times complained of herein, Defendants were acting for and on their own behalf and as agents, ostensible agents, servants and/or employees of each other in the course and scope of their employment, agency and/or ostensible agency.

88.     As a proximate result of Defendants' and each of their acts and omissions complained of herein, Plaintiff and the class has suffered damages as follows:

     a.     Defendants have failed to pay Plaintiffs and the class the amount of money due and owed for all royalties for NGLs due plaintiffs and the class pursuant to the terms of the lease agreements.

     b.     Plaintiffs and the class have lost the use of the money due and owing Plaintiffs and the class pursuant to the Defendants' conduct.

     c.     Defendants have failed and refused to provide plaintiffs with statements that include all the information required by specific terms of the leases and the law of West Virginia.

     d.     Plaintiffs have been annoyed, inconvenienced and incurred unnecessary costs, expenses and taxation as a consequence of Defendants' acts and conduct.

     e.     Plaintiff have been otherwise damaged by defendants' conduct.

89.     The actions of defendants named in this "Consolidated Complaint" as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs

and others, including the entire class, entitling the plaintiffs and the class to punitive damages for all causes of action alleged herein.  In particular, defendants entered into a plan and design to omit to tell plaintiffs and the class that the method of paying them for the royalty due them did not accurately and fully pay plaintiffs for the NGLs and to take portions of plaintiffs' royalties for NGLs as deductions, to which defendants were not entitled, and to use them for their own business purposes and for failure to pay plaintiffs for portions of their gas which were sold separately for liquids without compensating plaintiffs.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

91.     Plaintiffs bring this action on behalf of themselves and the WV Class of similarly situated persons and entities pursuant to Fed. R. Civ. P. 23(b)(3), consisting of persons and entities to whom EQT has paid or has an obligation to pay royalties under the WV Class Leases on Oil and Gas produced from the EQT WV Wet Gas Wells and have not been paid royalties for NGLs in accordance with the WV Class Leases in breach of EQT's obligations under the Class Leases and/or in violation of EQT's statutory duty to timely tender royalty payments due and owing for NGLs pursuant to West Virginia Code § 37C-1-3 (the "Class").

92.     Excluded from the Class are: a) any oil and gas interest owned by any federal, state or municipal governmental entity; b) any owner of a working interest in the EQT WV Wet Gas Wells; c) any oil and gas interest owned by any Defendant; and d) any claims brought pursuant to a Class Lease which contain a binding arbitration provision.

93.     The Class is so numerous as to make it impractical to bring all before the court thereby satisfying Fed. R. Civ. P. 23(a)(1).

94.     Plaintiffs have claims against EQT that are typical of the claims of the Class members because: The Glover Lease, the Goshorn Ridge Lease and the Class Leases are owners of oil and gas estates in West Virginia which require defendants to pay fully for hydrocarbons and they are not being so paid , for hydrocarbons and/or constituents or parts thereof; EQT has breached the same and/or substantially similar contractual and statutory duties owed Plaintiffs and the Class by failing to properly pay royalties for the production and/or sale of NGLs and failing to timely tender royalty payments due and owing for NGLs pursuant to West Virginia Code § 37C-1-3; and Plaintiffs will adequately protect the interests of the Class with respect to the appropriate common issues of fact and law.

95.     Plaintiffs have retained counsel who are competent to prosecute this action for and on behalf of Plaintiffs and the Class.

96.     The prosecution of this civil action by Plaintiffs and all Class members in separate actions: (1) would create a risk of inconsistent or varying adjudications with respect to individual members of the Class; (2) could, as a practical matter, be dispositive of interests of other members of the Class who were not parties to the separate actions; and (3) may substantially impair or impede the Plaintiffs' ability to protect their interests.

97.     EQT has acted on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

98.     There are common questions of law and fact to the members of the Class that predominate over any questions affecting only individual members, including, but not limited to:

> A.     Whether EQT is contractually obligated to pay Plaintiffs and the Class royalties on NGLs produced and/or sold as required by the Class Leases;
>
> B.     Whether EQT is contractually obligated to pay Plaintiffs and the Class royalties on NGLs produced and/or sold based on a sale to an unaffiliated and unrelated third party;

C.      Whether EQT breached its contractual obligation to pay royalties for the production and/or sale of NGLs to Plaintiffs and the Class;

D.      Did the defendants intentionally and maliciously violate their contractual obligations?

E.      Whether EQT had a duty pursuant to W. Va. Code § 37C-1-3 to timely tender required royalty payments to Plaintiffs and the Class for the production and/or sale of NGLs;

F.      Whether EQT violated the provisions of W.Va. Code § 22-6-8.

G.      Whether EQT violated W. Va. Code § 37C-1-3 by failing to timely tender royalty payments to Plaintiffs and the Class in connection with the production and/or sale of NGLs;

H.      Whether EQT calculated and paid royalties on NGLS in accordance with the WV Class Leases;

I.      What are the appropriate deductions that defendants may make, if any, from the rents and royalties for NGLs under the aforesaid leases;

J.      Did defendants intentionally conceal the true value of the NGLs and hydrocarbons from Plaintiffs and the class;

K.      Whether the defendants' acts and omissions were fraudulent.

L.      Are plaintiffs entitled to punitive damages from defendants for fraudulent concealment and/or intentional and malicious breach of contract; and

M.      Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

99.      Plaintiffs will fairly and adequately protect the interests of the Class because the interests of Plaintiffs as Class representatives are consistent with those of the other Class members.

100.      Prosecution of a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

101.    The interests of members of the Class, as to common questions of law and fact, in individually controlling the prosecution of separate actions do not outweigh the benefits of a class action as to those issues.

102.    Any difficulties in management of this case as a class action are outweighed by the benefits of a class action with respect to disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action.

103.    Plaintiffs are unaware of any other class actions filed in the last three years with similar factual allegations against EQT.

## COUNT I
## BREACH OF CONTRACT

104.    Plaintiff and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

105.    Plaintiffs and the Class are or were owners of Oil and Gas leases and/or mineral interests, royalty interests, and/or other interests in the Class Leases.

106.    EQT is the owner of a working interest of the Glover Lease, the Goshorn Ridge Lease and the Class Leases, and a producer of Oil, Gas, NGLs, fluid and other hydrocarbons and constituents thereof.

107.    Plaintiffs and the Class have contractual rights and EQT has contractual obligations associated with the Glover Lease, the Goshorn Ridge Lease and the Class Leases such that Plaintiffs and the Class are contractually entitled to receive, among other valuable consideration, royalties from the production and/or sale of NGLs based upon a sale of NGLs to an uncontrolled, unaffiliated and unrelated third party.

108.    EQT has intentionally and maliciously breached the Glover Lease, the Goshorn

Ridge Lease and the Class Leases by failing to pay Plaintiffs and the Class their required share of

royalties for the production and/or sale of NGLs based on the sale of NGLs to an unaffiliated and

unrelated third party.

109.    As a direct and proximate result of the actions of the Defendants, as aforesaid, the

Plaintiffs and the Class, have suffered damages in the form of substantial lost royalties and

revenues, and interest, as well as other damages.

**COUNT II**
**STATUTORY VIOLATION OF WEST VIRGINIA CODE § 37C-1-3**

110.    Plaintiffs and all other Class members incorporate the allegations within all prior

paragraphs within this Complaint as if they were fully set forth herein.

111.    W. Va. Code § 37C-1-3 provides in pertinent part, "all regular production payments

from horizontal wells due and owing to an interest owner shall be tendered in a timely manner,

which shall not exceed 120 days from the first date of sale of oil, natural gas, or natural gas liquids

is realized and within 60 days thereafter for each additional sale, unless such failure to remit is due

to lack of record title in the interest owner, a legal dispute concerning the interest a missing or

unlocatable owner of the interest, or due to conditions otherwise specified in this article."

112.    EQT's actions, as aforesaid, violated W. Va. Code § 37C-1-3 by failing to pay the

Plaintiffs and the Class in full for payments due and owed them as interest owners for NGLs

produced and/or sold from horizontal wells within 120 days of their first sale and/or within 60 days

of subsequent sales.

113.    EQT's actions, as aforesaid, violated W.Va. Code § 37C-1-3 by failing to make

timely payments and entitles Plaintiffs to a mandatory interest penalty to be set at the prime rate

plus an additional two percent until such payments are made, compounded quarterly, pursuant to W. Va.  Code §37C-1-3.

114.    As a direct and proximate result of the actions of the Defendants, as aforesaid, the Plaintiffs and the Class which they represent, have suffered damages in the form of substantial lost royalties, revenues, and interest, as well as other damages.

## COUNT III
## BREACH OF FIDUCIARY DUTY

115.    Plaintiffs and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

116.    Defendants violated their fiduciary duties and responsibilities to Plaintiffs and the class as aforesaid, and Plaintiffs were damaged as aforesaid.

117.    Plaintiffs and the class are entitled to be paid their rents and royalties and other damages as described herein.

## COUNT IV
## MISREPRESENTATION

118.    Plaintiffs and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

119.    Defendants misrepresented by omission that Defendants were not properly and fully paying to plaintiffs and the class for royalty on NGL sales and were properly paying for NGLs and were entitled to take deductions from Plaintiffs' royalty, reduced Plaintiffs' royalty payments and/or wrongfully claimed Plaintiffs' royalty due was less than the amount actually due, thereby denying Plaintiffs the rents and royalties to which they were due.

120.    Plaintiffs relied and were required to rely on the Defendants for the honest accounting and lawful payments to Plaintiffs of royalty owed to them on an ongoing basis.

121.     Plaintiffs were damaged as a result of Defendants' knowing and unlawful acts and omissions in continuing to take deductions from Plaintiffs' royalties, failing to pay Plaintiffs the fair value of money owed to them for the gas and NGLs at the point of sale and by Defendants taking their money and using it for themselves.

122.     As a proximate result of the wrongful, knowing and fraudulent acts and omissions of Defendants, Plaintiffs and the class were damaged as set forth herein.

## COUNT V
## PUNITIVE DAMAGES

123.     Plaintiffs and all other Class members incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

124.     Defendants set about to knowingly, intentionally and maliciously withhold payment and take deductions from plaintiffs' royalty as set out above, without any modifications of the lease or permission from plaintiffs for the purpose of keeping money belonging to plaintiffs and using said money for its own operations and to profit defendants.

125.     The actions of Defendants named in this Complaint as set forth herein above were done knowingly, intentionally, maliciously and with a reckless disregard for the rights of the Plaintiffs, entitling the Plaintiffs and the class to punitive damages for all causes of action alleged herein.

**WHEREFORE,** Plaintiffs William D. Glover and Linda K. Glover, his wife, Richard A. Glover and Christy L. Glover, his wife, and Goshorn Ridge, LLC, and on behalf of all others similarly situated, request the following relief:

A.      An Order from this Court ordering that this is an appropriate action to be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and finding that Plaintiffs and their counsel are appropriate representatives and appropriate counsel for the Class, and that this action shall proceed as a class action on all common issues of law and fact;

B.      A judgement against EQT Corporation, EQT Production Company, EQT Energy LLC, EQT Energy II, LLC, EQT Gathering, LLC, EQT Midstream Partners, LP, Trans Energy, Inc, Republic Energy Ventures, LLC and Republic Energy Operating, LLC that said defendants are liable to Plaintiffs and the Class, jointly and severally, for all damages allowed by law including but not limited to compensatory and punitive damages, in an amount to be determined by a jury, according to the laws of the State of West Virginia;

C.      An Order reserving the individual damage claims of Plaintiff and each member of the Class that may develop for separate resolution in this action or in any other individual, consolidated, or class action;

D.      Pre-judgment and post-judgment interest as provided under the law;

E.      Costs and attorney fees expended in the prosecution of this matter;

F.      Equitable and injunctive relief requiring an accounting and notice to plaintiffs and the class to Plaintiffs and the class for all gas and hydrocarbons produced from said wells, including but not limited to volumes, testing and sales transactions;

G.      An accounting by each defendant for the gas produced and extracted from said wells, the amount sold, the sales price, the market price of the gas, all costs, taxes and charges made and deducted from the royalty;

H.      All general, special, and equitable relief to which Plaintiff and the members of the Class are entitled by law; and

I.      Any and all further relief as a court and/or jury deem just and proper.

The minimum jurisdictional amount established for filing this action is satisfied.

## **PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully Submitted,

**WILLIAM D. GLOVER and LINDA K. GLOVER, his wife, RICHARD A. GLOVER, and CHRISTY L. GLOVER, his wife, and GOSHORN RIDGE, LLC, Individually, and on Behalf of All Others Similarly Situated**, *Plaintiffs*

By:  _____
                Of Counsel

Robert J. Fitzsimmons (W.Va. Bar #9656)
Mark Colantonio (W.Va. Bar #4238)
Donald M. Kresen (W.Va. Bar #4270)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, West Virginia 26003
Phone:  304-277-1700
Fax:    304-277-1705
Email: rocky@fitzsimmonsfirm.com
Email: mark@fitzsimmonsfirm.com
Email: don@fitzsimmonsfirm.com

Eric M. Gordon (WV Bar# 6897)
**Berry, Kessler, Crutchfield, Taylor & Gordon**
514 Seventh Street
Moundsville, West Virginia 26041
Phone: (304) 845-2580
Fax: (304) 845-9055
Email: egordon@bkctg.com

Roger L. Cutright, Esquire (W.Va. Bar# 7152)
Andrew R. Cutright, Esq. (W.Va. Bar# 11652)
**Cutright Law PLLC**
455 Suncrest Towne Centre, Suite 201
Morgantown, WV 26505
Phone: (304) 943-7933

rlcutright@cutrightlawwv.net


Marvin W. Masters (W.Va. Bar# 2359)
**THE MASTERS LAW FIRM LC**
181 Summers Street
Charleston, West Virginia  5301
Phone: (304) 342-3106
mwm@themasterslawfirm.com

Ethan Vessels (W. Va Bar #9543)
**FIELDS, DEHMLOW & VESSELS, LLC**
309 Second Street
Marietta, Ohio 45750
Phone: (740) 374-5346
ethan@fieldsdehmlow.com