## STONE ENERGY CORPORATION OIL AND GAS LEASE

**Lease.** This lease (the "Lease") is made and entered into as of the _30_ day of ___*August*___, 2014, by and between William D. Glover and Linda K. Glover, husband and wife, whose address is 83 Glenview Drive, New Martinsville, WV, 26155, and Richard A. Glover and Christy L. Glover, husband and wife, whose address is 725 West Drive, New Martinsville, WV 26155, (individually or collectively, the "Lessor"), and Stone Energy Corporation, a Delaware corporation, whose address is 625 East Kaliste Saloom Road, Lafayette, LA 70508, authorized to do business in the State of West Virginia (the "Lessee"). Lessor and Lessee are sometimes referred to individually as a "Party" and collectively as "Parties".

**Consideration.** For and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration paid by Lessor to Lessee, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Delay Rental Payments.** Lessee has will prepay all delay rental payments (paid-up-lease) for the Primary Term to Lessor; no further delay rental payments are due to Lessor for any part of the Primary Term.

2. **Grant of Lease.** Lessor hereby grants and leases exclusively to the Lessee all of the oil, gas, methane, coalbed methane, coal mine methane, and hydrocarbons and all of the constituents of any of the foregoing (collectively, "Oil and Gas") in and under that certain tract of land (the "Leased Premises") described herein, together with the exclusive right to enter and possess as necessary and convenient the surface area of the Leased Premises to establish, build, erect, or lay roads, pipelines, tanks, compressors, machinery, towers, or structures for the purpose of exploring, testing, drilling, capturing, producing, marketing, and transporting the Oil and Gas produced from the Leased Premises, from adjoining lands, or lands pooled therewith. There is excepted and reserved from the operation of this lease the borehole of an existing well situate on the Leased Premises known as the Glover #1 Well or W. D. Glover 1 Well, API No. 47-103-01393, which was drilled to a total vertical depth of 2,600 feet. The term "Oil" as used herein shall include all forms of liquid hydrocarbons. The term "Gas" as used herein shall also include helium, carbon dioxide, gaseous sulfur compounds, coalbed methane and any other commercial gases.

3. **Leased Premises.** The lands that are the subject of this Agreement are described as being located in Proctor District, Wetzel County, West Virginia, and bounded and described as follows:

    > Bounded on the north by: Donna D. Horner and George L. Horner
    > Bounded on the east by: Huff Ridge Road and Price Hill Road
    > Bounded on the south by: Brock T. Conner
    > Bounded on the west by: Larry Arnold Casto and Sondra Lou Casto

    containing 53.231 acres, more or less (the "Mineral Tract"); it is the intent of Lessor to lease, and Lessee does hereby lease all strips, tracts or parcels of land now owned or hereafter acquired by Lessor that are contiguous or adjacent to the lands described above, and all interests in the lands described above now owned or hereafter acquired by Lessor.

    Being the same property interest that was conveyed or devised by that certain document recorded in the Clerk's office of Wetzel County, West Virginia in Deed Book 336, page 507.

1

The surface area of the Mineral Tract is further described by reference to Proctor District, Tax Map # 1, Parcels # 22 and 23.1.

4. **Term of Lease.** This Lease shall be in effect for a term of five (5) years, (the "Primary Term") and as long thereafter as continuous operations for Oil and Gas are being conducted on, as defined in Paragraph 13 below, or Oil and Gas is being produced in paying quantities from the Leased Premises, or on lands pooled therewith, or this Lease is maintained by any of the provisions contained herein.

5. **Option to Extend.** Lessor hereby grants to Lessee the exclusive first right and option to extend the Primary Term of this Lease for an additional five (5) years from the expiration of the initial primary term by paying or tendering the sum of THREE THOUSAND FIVE HUNDRED and 00/100 ($3500.00) dollars per net acre for the acreage covered by this Lease to Lessor at the addresses above, or to their successors or assigns at the addresses that have been changed in accordance with the terms hereof, according to Lessee's records, within ninety (90) days after the expiration of the initial primary term of this Lease. Should Lessee exercise this option as provided herein, it shall be considered for all purposes as though this Lease originally provided a Primary Term of five (5) years, as a Paid-Up Lease. Within sixty (60) days of the exercise of the option, Lessee shall execute and file of record a statement that the option herein has been exercised, which sets forththe new expiration date of the Primary Term.

6. **Royalty on Oil.** Lessee shall deliver to the credit of Lessor, free of drilling, completing, equipping and operating costs, into Lessor's tanks on the Leased Premises or in the pipeline thereon that Lessor may designate, the equivalent Eighteen and Seventy Five-One Hundredths percent (18.75%) part of all Oil produced and saved from the Leased Premises, or lands pooled therewith.

7. **Royalty on Gas.** Lessee shall pay to Lessor, free of drilling, completing, equipping and operating costs, the equivalent Eighteen and Seventy Five-One Hundredths percent (18.75%) part of the gross proceeds received from the sale of Gas, casinghead gas, and other gaseous hydrocarbons produced, saved and sold from the Leased Premises, or lands pooled therewith. The term "gross proceeds" as used herein shall mean the gross amount realized from a sale of the Gas or its components to a *bona fide* third party purchaser, after deducting gathering, transportation, compression, processing, fuel and other services for Lessor's Gas either on its own or through one or more wholly owned subsidiaries of Lessee, and to deduct from the royalty to be paid to the Lessor the costs and/or expenses of providing such services, including shrinkage or line loss, if any.

8. **Payments.** All payments due Lessor hereunder shall be payable to Lessor at the address specified above.

9. **Warranty.** Lessor hereby warrants and agrees to defend the title to the Leased Premises against all persons, and agrees that the Lessee at its option may pay, discharge, or redeem any taxes, mortgages, or other liens existing, levied or assessed on or against the Leased Premises, and in the event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty or payments accruing hereunder to the discharge of any such taxes, mortgages, or other liens. In case of any dispute regarding the title to the Leased Premises, or any part thereof, or to any sums of money due hereunder, Lessee shall have the right to withhold and retain said sums in suspense, without interest, until the final determination of the dispute by agreement or by an order of a court of competent jurisdiction.

2

10. **Lesser Interest**. If Lessor owns less than the entirety of the mineral estate in the Leased Premises, then Lessor's royalty and any other payments hereunder shall be reduced to the proportion that Lessor's interest bears to the entirety of the mineral estate.

11. **Pooling and Unitization**. Lessee shall have the right at any time, and from time to time during any term of this Lease to pool or combine (including the right to amend such pooling or combination), within Lessee's sole discretion, all or any portion of the Leased Premises, or formation, or any depth or depths thereunder with any other lands, oil and gas estates, lease, leases or parts thereof, into one or more units for the drilling or the production of oil and gas through vertical, horizontal or directional wells, for primary or secondary recovery methods (including, but not limited to waterflooding, gas injection or injection of any other substance) or combinations of any recovery techniques. Lessee may pool or combine all or any portion of the Leased Premises before, during or after the drilling of a well on the Leased Premises or on lands pooled therewith. No pool or unit for Gas shall exceed six hundred forty (640) acres in size (plus ten (10%) percent tolerance), more or less, unless permitted by applicable laws, administrative or regulatory orders of any governmental authority having jurisdiction. Operations or production on one portion of the lands pooled or unitized hereunder, as it may from time to time be amended, shall be deemed to be operations or production on the Leased Premises, regardless of whether the well or wells are located on the Leased Premises. In lieu of the royalty provided for above, Lessor shall only be entitled to receive the royalty provided in this Lease as the amount of acreage of the Leased Premises that is included within the pool or unit bears to the entirety of the acreage within the pooled or unitized lands.

12. **Shut-In Royalty**. If at any time during any term of this Lease, there is a well capable of producing Gas in paying quantities located on the Leased Premises, or on lands pooled therewith, but said well is shut-in (whether before or after the well was placed on production) and the Lease in not being maintained by operations or production on the Leased Premises, or on lands pooled therewith, or being maintained by any other provision herein, this Lease shall nonetheless be considered as producing in paying quantities as herein provided. On or before the end of one year from the date that the well is shut-in, Lessee shall pay or tender to Lessor, or to those who are entitled to royalty payments hereunder, a shut-in royalty equal to one ($1.00) dollar per acre for the acreage under this Lease so held by this provision. Thereafter, Lessee may pay or tender to Lessor, or to those who are entitled to royalty payments hereunder, a like amount at the anniversary of each annual period following the initial annual shut-in period. This Lease may be maintained by shut-in payments made or tendered as provided herein indefinitely.

13. **Continuous Operations**. If during the last ninety (90) days of the Primary Term hereof, or at any time after the expiration of the Primary Term, production of Oil and Gas in paying quantities from the Leased Premises, or lands pooled therewith, should cease for any reason, or if during or after such ninety (90) day period and prior to the discovery of Oil and Gas on the Leased Premises, or lands pooled therewith, Lessee should complete a well as a dry hole, this Lease shall not terminate if Lessee commences or resumes additional operations on the Leased Premises, or lands pooled therewith within one hundred eighty (180) days after production ceased or the well was completed as a dry hole, whichever is applicable. If at the expiration of the Primary Term, Oil and Gas is not being produced in paying quantities from the Leased Premises, or lands pooled therewith, but the Lessee is then engaged in operations thereon, this Lease shall remain in force so long as operations are prosecuted (whether on the same or different wells) with no cessation of more than one hundred eighty (180) consecutive days, and if they result in production, so long thereafter as Oil and Gas is produced in paying quantities from the Leased Premises, or lands pooled therewith. The term "operations" as used in this Lease shall include, but not be limited to the drilling, testing, completing (including horizontal

and directional wells), reworking, recompleting, deepening, plugging back, or repairing a well, together with all work preparatory, incident or related to any such operation, in search for or in an effort to obtain, restore, maintain or increase production of Oil and Gas.

14. **Limitations on Use of the Surface and of the Leased Premises; Damages**. No well may be drilled closer than two hundred (200) feet to any structure now on the Leased Premises without the written consent of Lessor. Lessee shall have the right to use free of cost, Gas, Oil and water produced from the Leased Premises for its operations thereon, except from Lessor's water wells. Lessee shall have the right at any time to remove all or part of the machinery, fixtures or structures placed on the Leased Premises by Lessee, including the right to draw and remove casing. Lessee shall pay for damages caused by its operations to growing crops, trees and fences located on the Leased Premises.

15. **Assignments**. The rights of either party may be assigned in whole or in part, and the provisions hereof shall extend to the heirs, executors, administrators, successors and assigns. However, no change of division in ownership of the Leased Premises or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No such change or division in the ownership of the Leased Premises or royalties shall be binding upon the Lessee for any purpose until sixty (60) days after the person acquiring any interest has furnished Lessee with the instrument(s), or certified copies thereof, constituting his chain of title from the original Lessor herein. In the case of any assignment of this Lease as to any part of the Leased Premises, divided or undivided, all monies payable hereunder shall be apportioned among the several owners of the Leased Premises ratably according to the number of surface acres, or the undivided interest of each. Failure to pay one owner of the Leased Premises shall not affect the rights of the other owners hereunder.

16. **Surrender of Lease**. Lessee may surrender this Lease, or any part thereof for cancellation, after which all payments and liabilities hereunder shall cease as to that part of the Leased Premises so surrendered.

17. **Regulation, Delay and Force Majeure**. Lessee's obligations under this Lease, whether express or implied, shall be subject to all applicable laws, rules, regulations and orders of any governmental authority having jurisdiction, including restrictions on the drilling and production of wells, and regulation of the price or transportation of Oil, Gas and other substances covered hereby. When drilling, reworking, production or other operations are prevented or delayed by such laws, rules, regulations or orders, or by inability to obtain necessary permits, equipment, services, material, water, electricity, fuel, access or easements, or by fire, flood, adverse weather conditions, war, sabotage, rebellion, insurrection, riot, strike or labor disputes, or by inability to obtain a satisfactory market for production or failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within Lessee's control, this Lease shall not terminate because of such prevention or delay, and, at Lessee's option, the period of such prevention or delay shall be added to the term hereof. Lessee shall not be liable for breach of any provisions or implied covenants of this Lease when drilling; production or other operations are so prevented or delayed.

18. **Lease Development**. Lessor hereby waives any implied covenant to drill, prevent drainage, further develop or market production during the Primary Term that may be imposed on Lessee.

19. **Default and Cure**. Lessor shall not declare Lessee in default under any provision of this Agreement, unless Lessor shall first notify Lessee in writing at the addresses above of

4

Lessor's intention to declare such a default, which shall specify the nature of the default in detail, and Lessee fails to cure said default within thirty (30) days after receipt of said notice.

20. **Entire Agreement**. This Lease constitutes the entire understanding between the parties hereto, and no representation, warranty or promise of behalf of either party shall be binding unless contained herein, or mutually agreed in writing by all parties hereto.

21. **Counterparts**. This Lease may be executed in any number of counterparts, each of which will be considered to be an original of this Agreement, and all of them taken together shall be considered one and the same Agreement.

22. **Addendum**.   The attached addendum is hereby incorporated into this Lease by this reference.

EXECUTED as of the date first written above.

                              LESSOR

                              _William D Glover_
                              William D. Glover

                              _Linda K. Glover_
                              Linda K. Glover

                              _Richard A. Glover_
                              Richard A. Glover

                              _Christy L Glover_
                              Christy L. Glover


                              LESSEE

                              **Stone Energy Corporation**


                              By: _____
                                   Roger L. Cutright, Land Manager and
                                   Special Counsel


## ACKNOWLEDGMENT BY LESSOR

STATE OF ___WV___

COUNTY OF ___Ohio___

The foregoing instrument was acknowledged before me on this __30__ day of __August__, 2014 by W William D. Glover and Linda K. Glover, husband and wife, and Richard A. Glover and Christy L. Glover, husband and wife, Lessors.



                              _Leslie G Lee_
                              Notary Public
                              My commission expires: _April 24, 2016_

## ACKNOWLEDGMENT BY LESSEE

5

STATE OF WEST VIRGINIA

COUNTY OF MONONGALIA

The foregoing instrument was acknowledged before me this _____ day of _____,
2014 by Roger L. Cutright, Land Manager and Special Counsel, on behalf of Stone Energy
Corporation, a Delaware corporation.

_____
Notary Public
My commission expires: _____

This instrument was prepared by:
Stone Energy Corporation
1300 Fort Pierpont Drive, Suite 201
Morgantown, WV 26508

**ADDENDUM TO OIL AND GAS LEASE**
**DATED** _August 30, 2014_
**FROM W. D. GLOVER and R. A. GLOVER, AS LESSOR,**
**AND STONE ENERGY CORPORATION, AS LESSEE ("LEASE")**

1. **CONFLICT OF TERMS:** In the event of a conflict or inconsistency between the printed terms set forth in this addendum and the printed terms of the Lease to which this addendum is attached, the printed terms of this addendum shall control and be deemed to supersede the printed terms of said Lease in all respects.

2. **LEASE TO REMAIN IN EFFECT:** Except to the extent modified by this Addendum, the terms, covenants, conditions, rights, duties, and obligations of the Parties set forth in the Lease to which this Addendum is attached shall remain in full force and effect in accordance with the terms thereof. The holding of any part of said Lease and/or this Addendum to be ineffective or unenforceable shall not act to alter any other provisions thereof or hereof.

3. **COST-FREE ROYALTY:** Lessee shall pay to Lessor, free of drilling, completing, equipping and operating costs, the equivalent of eighteen and three-fourths percent (18.75%) part of the gross proceeds received from the sale of Oil and Gas produced, saved and sold from the Leased Premises, or lands pooled therewith. The term "gross proceeds" as used herein shall mean the gross amount realized from a sale of the Oil and Gas or its components to a *bona fide* third party purchaser, without deducting gathering, transportation, compression, processing, fuel and other services for Lessor's Oil and Gas either on its own or through one or more wholly owned subsidiaries of Lessee, or the costs and/or expenses of providing such services, including shrinkage or line loss, if any.

4. **INDEMNITY CLAUSE:** Lessee agrees to indemnify, protect, save harmless and defend Lessor from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property occurring as a result of Lessee's use of the leased premises, or as a result of loss, expense, injury, death or damage, which would not have occurred but for Lessee's use of the leased premises.

5. **TITLE TO MINERALS CLAUSE:** The sole responsibility for confirming satisfactory title to the oil and gas and minerals shall be that of Lessee and Lessee shall perform any mineral searches at Lessee's sole cost and expense.

6. **NO SURFACE OPERATIONS CLAUSE:** Lessee agrees, notwithstanding anything to the contrary contained herein, that no surface rights are granted herein. This is a non-surface operations lease.

7. **SUPPLEMENTAL POOLING CLAUSE:** Notwithstanding any other provision of the Lease to the contrary, 100% of the leased premises shall be included in a unit or pool, being the Pribble Unit.

WITNESS the following signatures and seals:

LESSOR:

_William D. Glover_
William D. Glover

_Linda K. Glover_
Linda K. Glover

_Richard A. Glover_
Richard A. Glover

_Christy L. Glover_
Christy L. Glover

LESSEE:

Stone Energy Corporation

By:_____
Name: Roger L. Cutright, Land Manager and Special Counsel