## PAID UP OIL AND GAS LEASE

THIS AGREEMENT made and entered into this the 11th day of November, 2010 by and between Goshorn Ridge LLC, 112 Algonquin Trace, Wheeling, West Virginia, 26003, hereinafter called **Lessor** (whether one or more), and

**TRANS ENERGY, INC., P.O. BOX 393, ST. MARYS, WEST VIRGINIA 26170 (50%) AND REPUBLIC ENERGY VENTURES, LLC, 4925 GREENVILLE AVENUE, SUITE 1050, DALLAS, TEXAS 75206 (50%),**

AND THEIR SUCCESSORS OR ASSIGNS, HEREINAFTER COLLECTIVELY CALLED **LESSEE**.

WITNESSETH, that the said Lessor, in consideration of the sum of ONE DOLLAR ($1.00), the receipt of which is hereby acknowledged, and of the covenants hereinafter contained on the part of the said Lessee, to be paid, kept and performed, has granted, demised, leased and let exclusively unto Lessee, for the purpose and with the rights of exploring by geophysical and other methods, drilling, producing and otherwise operating for oil and gas from the Marcellus Shale and shallower geological zones not including coalbed methane, and of laying pipe lines and building tanks, roads, stations, electric power lines, houses for valves, meters, regulators and other appliances with all other rights and privileges necessary, incident to or convenient for the operation of this land all that certain tract of land situate in the Districts of Cameron and Liberty, County of Marshall, State of WEST VIRGINIA, and bounded substantially as follows:

On the North by:  Karen Evans & Judy Matthews
On the East by:   Samantha G. Morris
On the South by:  Louise T. Wayt Est.
On the West by:   James T. Hibbs

Containing 937 acres of land, whether actually containing more or less and described in that certain deed recorded in Deed Book 270, Page 181, in the Office of the Clerk of the County Commission of Marshall County, West Virginia.

   1. Lessee agrees to drill and complete two or more horizontal wells to and into the Marcellus Shale by December 31, 2011. If two wells are not drilled and completed by this time then this lease will become null and void.
   2. Lessee covenants and agrees to deliver to the credit of Lessor, its heirs or assigns, a royalty of twenty percent (20%) market value of oil (in barrels) and gas (as defined in dekatherms ((1,000 btu per mcf)) both as measured at the wellhead and other hydrocarbon substances produced and saved from the leased premises and paid by third parties. Such payments shall be made within 60 days of the production month or 10 business days of receipt by Lessee whichever is earlier. The royalty paid hereunder shall be based on gross proceeds received by Lessee without deduction for expenses incurred by Lessee, including but not limited to expenses to produce, separate, compress, or transport produced volumes to the point of sale. The first royalty payment for each well shall be paid within 120 days from the first day of actual production of oil or gas. Royalty reports shall comply with the minimum standard as required by the State of Texas and shall include items 1-12 on the attached Exhibit "A".
   3. All payments under this lease shall be made by check and mailed to the Lessor, until the Lessee shall have written notice from the Lessor, its heirs or assigns, accompanied by original or certified copies of deeds or other documents as Lessee may require evidencing such change of ownership directing payments to be made otherwise and any payments made as above until such direction, and thereafter in accordance with such direction shall absolve the Lessee from any liability to any heir or assign of the Lessor. All payments or royalty are to be made according to Lessor's respective interest therein, as hereafter set forth, and this lease shall not be forfeited for Lessee's failure to pay any rentals or royalties until Lessee receives written notice by registered mail of such default and shall fail for a period of thirty (30) days after receipt of such notice to pay same.
   4. To its best knowledge and belief, Lessor believes it has good title to the leased premises. Lessor further covenants and agrees, that if Lessor's title to the premises shall come into dispute or litigation, or if in the judgment of Lessee, there are a bona fide adverse claims to the rentals or royalties hereinabove provided for, then Lessee, at its option, may withhold future payment of said rentals or royalties and place them in an interest bearing escrow account until final adjudication or other settlement of such dispute, litigation, claim or claims. Any prior amounts received by Lessor shall not be subject to repayment to Lessee.
   5. If and when drilling or other operations hereunder are delayed or interrupted by a force majeure, as hereinafter defined, the time of such delay or interruption shall not be counted against Lessee, anything in this lease to the contrary notwithstanding. All express or implied covenants of this lease shall be subject to all Federal and State laws, Executive Orders, Rule and Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages for failure to comply therewith, if compliance is prevented by, or if such failure is the result of any such Law, Order, Rule or Regulation.
   6. Lessee shall have the right at any time during the term of this lease to remove all machinery, fixture, pipe lines, meters, well equipment, houses, buildings, and other structures which Lessee has placed or caused to be placed on said premises, including the

right to pull and remove all casing and tubing. Lessee shall restore the surface as near as possible to original grade. Lessee shall give a minimum of 72 hours written notice to Lessor before removal of machinery and equipment other than in the normal course of business.

7. Where multiple parties are named as Lessee, each shall jointly and severally be liable for the Lessee's obligations herein. An assignment of this lease, in whole or in part, shall, to the extent of such assignment, relieve and discharge Lessee or any individual constituent party Lessee, of any obligations hereunder arising after such assignment, and, if Lessee or any assignee of part or parts hereof shall fail to comply with any provision of this lease, such default shall not affect this lease insofar as it covers a part of said land upon which Lessee or any assignee thereof shall not be in default. Any assignment shall only be made to a third party who has sufficient credit worthiness to perform all obligations of Lessee hereunder. Lessee shall provide Lessor with written notice of any proposed assignment at least 5 business days prior to any assignment.

8. It is agreed that said Lessee shall have the privilege of using free of charge sufficient water to run all machinery for drilling and operations thereon for all wells on said lease or any leases unitized herewith.

9. No well shall be drilled by Lessee within 200 feet of any dwelling house or barn on said premises, except by consent of Lessor.

10. Lessee shall pay the surface owner for itself and on behalf of Lessor, for all damages to timber, growing crops, fences or trees caused by Lessee's operations and shall be based on the current market value in the area for whatever type of crops were disturbed. Such damage shall be assessed by a representative of Penn State Cooperative Extension Service, USDA/NRCS, or a representative from the County Farm Bureau. Lessee shall use a quality pasture mix during reseeding and reclamation on any pasture areas affected by Lessee's operations. Lessee shall bury all permanent pipelines below plow depth (36 inches minimum, where possible) through cultivated areas upon request of Lessor or within a reasonable length of time thereafter. Lessee shall restore surface as near as possible to original grade within 180 days.

11. This instrument may be executed in counterparts each having the same validity as if the original.

12. Lessee is hereby granted, with consent of Lessor, which consent shall not be unreasonably withheld -the right to pool and unitize all or any part of the land described above with any other lease or leases, land or lands, mineral estates, or any of them whether owned by the Lessee or others, so as to create one or more drilling or production units. Such drilling or production units shall not exceed 640 acres in extent and shall conform to the rules and regulations of any lawful government authority having jurisdiction of the premises, and with good drilling or production practice in the area in which the land is located. In the event of the unitization of the whole or any part of the land covered by this lease, Lessee shall before or after the completion of the well, record a copy of its unit operation designation in the County wherein the leased premises are located and mail a copy thereof to the Lessor. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information on drilling operations. Lessee may at any time increase or decrease the portion of the acreage covered by this lease which is included in any drilling or production unit, or excludes it altogether, provided that written notice thereof shall be given to Lessor promptly. As each drilling or production unit designated by the Lessee, the Lessor agrees to accept and shall receive out of the production of the proceeds from the production from such unit, such proportion of the royalties specified herein, as the number of acres out of the lands covered by this lease which may be included from time to time in any such unit bears to the total number of acres included in such unit rather than the full amount of the royalty stated in section 2 above. The commencement, drilling, completion of or producing from a well on any portion of the unit created under the terms of this paragraph shall have the same effect upon the terms of this lease as if a well were commenced, drilled, completed or producing on the land described herein. Each Lessor affected by such Unit shall be notified in writing prior to spudding of the proposed Unit and after completion of such well shall be notified in writing of the actual Unit.

13. If a well becomes unproductive commercially or if required to do so by the State or Federal regulatory agencies, Lessee shall plug and abandon any well which it has drilled on the lease premises at Lessee's cost.

14. Lessee shall be entitled during the term of this lease to lay and maintain pipelines on and across Lessor's premises to transport, without any fee payable therefore to Lessor, natural gas, oil and other marketable hydrocarbons produced on the said tract of land. Lessee shall pay damages, if any, to the surface owner for itself and on behalf of Lessor in the laying of such pipeline(s).

15. Lessee shall attempt to sell at or above market price the production of all wells on such terms and conditions as Lessee, in its sole discretion may deem appropriate. Such sale shall not be to a related entity of the Lessee. The royalty shall never be less than 95% of posted Inside FERC gas prices for Northern West Virginia (or any successor publication to Inside FERC prices) at the time the contract is executed.

16. All the terms conditions, limitations and covenants herein contained shall be binding upon the parties hereto and shall extend to and be binding upon their respective heirs, successors, personal representatives and assigns, but no representations other than those herein contained shall be binding on either party.

17. Lessor does not warrant title but to the best of Lessor's knowledge states that the lease premises are not encumbered by any enforceable oil and gas lease of record or otherwise. Lessor is not currently receiving any bonus, rental, production royalty or shut-in royalty as the result of any prior oil and gas lease(s) covering any or all of the subject property.

18. This lease covers all formations and strata from the top of the Rhinestreet formation to the base of the Onandaga Limestone Formation, including Marcellus formation. The top of the Rinestreet being that Geological Formation or its stratigraphic equivalent at 6,682' and the Base of the Onandaga Limestone being that Geological Formation or its stratigraphic equivalent at 7,099' as depicted on the Baker Hughes, Inc. Compensanted Z-Densilog, Compensated Neutron Log, Digital Spectralog, Gamma Ray Log, Caliper Log, dated January 23, 2010 with the Kelly bushing at 1,518' (elevation) for the Trans Energy, Inc. – Whipkey #2H Well, API #47-051-1321 in Marshall County, West Virginia. Lessee shall have the right of first refusal to lease all formations above the Rhinestreet and below the Onondaga Limestone. Lessee agrees to use all wells for the production of oil and gas unless approved by Lessor in writing. The leased premises shall not be used for the underground storage of hydrocarbon or other substances.

19. Lessee shall test all water wells within 1,000 feet of each well that is drilled. Should a surface owner experience a material adverse change in the quality of surface owner's water supply from a water well within 1,000 feet of such well during or within 180 days of completion, Lessee shall within 48 hours of surface owner's written request, sample and test surface owner's water supply at Lessee's expense. Should such test reflect a material adverse change, Lessee, at Lessee's expense, agrees to provide surface owner with potable water for all households, livestock, and farming/agricultural or commercial uses at the time drilling commenced for the first well on the leased premises until such time as surface owner's water source has been repaired or replaced with a source of substantially similar quality and quantity.

20. It is agreed and understood that Lessee shall repair and restore the surface of the leased premises, including any damage to existing drainage tile as a result of Lessee's operations, to as close as reasonably practical to the condition in which the leased premises existed at the time of the commencement of drilling operations. Weather permitting, this work shall be completed within one hundred twenty (120) days after the cessation of the later of drilling, completing or equipping operations upon the leased premises.

21. No well shall be shut-in unless (a) the shut-in is due to Force Majeure (as hereinafter defined); (b) the shut-in is due to pipeline or equipment breakage, damage or malfunction; or (c) the shut-in is required because Lessee, in good faith and reasonable diligence,

has been unable to secure a market for the production from such well. The shut-in status of any well shall persist only for so long as it is necessary to correct, through the exercise of good faith and due diligence, the condition giving rise to the shut-in of the well. In the event that there is no production and any well is shut-in for 180 continuous days or 180 days in any calendar year then a shut-in royalty payment of $25.00 per acre per month for each well shall be paid to Lessor based upon the number of acres held by such well as defined in paragraph number 26 herein.

22. Lessee agrees to indemnify, protect, save harmless and defend Lessor from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property including any claims, expense or loss for any environmental or remediation issues occurring as a result of Lessee's use of the Leased premises or as a result of loss, expense, injury, death or damage, which would not have occurred but for Lessee's use of the Leased premises, except to the extent any such damage or injury is caused by Lessor's negligence.

23. Lessee shall pay Lessor a one time payment of $1,250.00 per net mineral acre within 90 days of the date herewith once title has been cleared by Lessee in its sole discretion by check. At request of Lessor, Lessee will pay the amount due under this paragraph in such proportions as Lessor may request even if some portion is requested to be paid prior to December 31, 2010. Earnest money in amount of $35,000.00 will be paid at signing, said amount shall be refunded should title not be approved by Lessee. If title is approved by Lessee, this amount shall be credited towards amount due to Lessor hereunder.

24. Lessee and Lessor agrees on the following drilling schedule:

| Well Number | Month/Year |
|---|---|
| 1, 2 | Back to back by December 31, 2011* |
| 3 | June 30, 2013 |
| 4 | December 31, 2015 |
| 5 | December 31, 2016 |

\* Lessee agrees to drill and complete two wells by December 31, 2011. Lessee will drill both wells back to back. Lessee hopes to drill these wells in the first quarter of 2011 with the Patterson Rig 163 but depending on timing (of signing, permitting, coal issues, pad site building) this might be delayed to the second or third quarter of 2011.

25. Lessee has the right for a six (6) month extension to drill and complete wells 3 through 5 for a payment of $200,000.00 per well. By exercising said extension it does not defer the commitment on any other wells.

26. In the event that Lessee does not meet the drilling schedule outlined herein then any prior wells drilled shall hold a 750 foot radius around the horizontal well bore starting at the point it penetrates the Marcellus formation (heel) and terminating at the end of the well bore (toe) and the balance of the premises shall revert to the Lessor free of this Lease.

27. Lessor agrees that if Lessee completes the five (5) proposed well commitments then said leased premises shall be held for so much longer thereafter as oil or gas or other hydrocarbon substances are commercially produced or are capable of being commercially produced.

28. Force Majeure: This Lease shall not be terminated, in whole or in part, nor shall Lessee be held liable for damages for failure to comply with express or implied covenants hereof if compliance, therewith, is prevented by or if such failure is the result of any Federal or State laws, executive orders, rules, or regulations whether valid or invalid, act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, or other act of nature, explosion, government action, government delay, restraints or inaction, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension, nor was caused by said party.

IN WITNESS WHEREOF, the parties to this agreement have hereunto set their hands and seals this day and year first above written.

Witness Signature:

*Lisa M Chapman*
LISA M. CHAPMAN

*[signature]*
DAVID N. PLATT

Lessor Signature:
GOSHORN RIDGE, LLC

By *[signature]* (Seal)
Robert C. Mead Sr.
Co-Manager of Goshorn Ridge LLC

By *[signature]* (Seal)
Charles C. Hart
Co-Manager of Goshorn Ridge, LLC

Lessee Signature:
TRANS ENERGY, INC.

By _____ (Seal)
   Its _____

REPUBLIC ENERGY VENTURES, LLC

By _____ (Seal)
   Its _____

STATE OF WEST VIRGINIA,
COUNTY OF OHIO, TO-WIT:

The foregoing instrument was acknowledged before me this 12th day of November 2010, by Robert C. Mead Sr. Co-Manager of Goshorn Ridge LLC.

*[Notary seal: OFFICIAL SEAL, NOTARY PUBLIC, STATE OF WEST VIRGINIA, BETTIE VDOVJAK, SCHRADER, BYRD & COMPANION, PLLC, 32 – 20th STREET, SUITE 500, WHEELING, WV 26003, My commission expires May 19, 2012]*

_____
Notary Public

May 19, 2012
My commission expires

STATE OF Florida,
COUNTY OF Lee, TO-WIT:

The foregoing instrument was acknowledged before me this 11th day of November 2010, by Charles C. Hart, Co-Manager of Goshorn Ridge, LLC.

*[Notary seal: SUSAN ANN BOBACK, Commission DD 653625, Expires April 19, 2011, Bonded Thru Troy Fain Insurance 800-385-7019]*

Susan A. Boback
Notary Public

_____
My commission expires

STATE OF _____,
COUNTY OF _____, TO-WIT:

The foregoing instrument was acknowledged before me this ____ day of _____, 2010, by _____, _____ on behalf of Trans Energy, Inc., to be the act and deed of said corporation.

_____
Notary Public

_____
My commission expires

STATE OF _____,
COUNTY OF _____, TO-WIT:

The foregoing instrument was acknowledged before me this ____ day of _____, 2010, by _____, _____ on behalf of Republic Energy Ventures, LLC, to be the act and deed of said limited liability company.

_____
Notary Public

_____
My commission expires

Trans Energy, Inc., reviewed and approved
By: _____
Its: _____

This document was prepared
By and is to be returned to:

**TransEnergy**
PO Box 393
St. Marys, WV 26170

Lessee Signature:
TRANS ENERGY, INC.

By _____[signature]_____ (Seal)
Its __LAND MANAGER__

REPUBLIC ENERGY VENTURES, LLC

By __D Swanson__ (Seal) JB
Its __John D. Swanson, PRESIDENT__

STATE OF WEST VIRGINIA,
COUNTY OF OHIO, TO-WIT:

The foregoing instrument was acknowledged before me this _____ day of _____ 2010, by

Robert C. Mead Sr. Co-Manager of Goshorn Ridge LLC.

_____
Notary Public

_____
My commission expires

STATE OF _____.
COUNTY OF _____, TO-WIT:

The foregoing instrument was acknowledged before me this _____ day of _____ 2010, by

Charles C. Hart, Co-Manager of Goshorn Ridge, LLC.

_____
Notary Public

_____
My commission expires

STATE OF __West Virginia__
COUNTY OF __Pleasants__, TO-WIT:

The foregoing instrument was acknowledged before me this __15th__ day of __November__, 2010, by __Mark Woodburn, Land Mgr__ on behalf of Trans Energy, Inc., to be the act and deed of said corporation.

[Seal: Official Seal Notary Public, State of West Virginia, Janet L. Woodburn, Tyler Construction Co., Inc., P.O. Box 362, St Marys, WV 26170, My commission expires February 26, 2017]

__Janet L. Woodburn__
Notary Public

__2/26/2017__
My commission expires

STATE OF __TEXAS__.
COUNTY OF __DALLAS__, TO-WIT:

The foregoing instrument was acknowledged before me this __11th__ day of __November__, 2010, by __John D. Swanson, President__ on behalf of Republic Energy Ventures, LLC, to be the act and deed of said limited liability company.

__Karran L Kuhler__
Notary Public

__12-12-11__
My commission expires

Trans Energy, Inc., reviewed and approved
By: _____
Its: _____

This document was prepared
By and is to be returned to:

Trans
PO Box 393
St. Marys, WV 26170

[Seal: KARRAN L. KUHLER, MY COMMISSION EXPIRES December 12, 2011]

## MINIMUM ROYALTY REPORTING**

Items to be included on the royalty check stub or an attachment to the royalty payment.

1. Identifying name(s) and number(s) of the lease, Lessors (payees), property, and API number for each well.

2. The month and year during which the production and sales occurred for which payment is being made.

3. The total number of barrels, MCF and MMBTU, and gallons of non-crude liquid hydrocarbons sold.

4. The price per barrel or MCF and MMBTU and per gallon for liquid non-crude oil hydrocarbons sold.

5. The total amount of state severance, ad valorem, and other production taxes paid.

6. The amount of any other taxes paid on the owners' interests.

7. An itemization of any other deductions or adjustments in terms of both dollars and quantitative amounts, and a detailed explanation in layman's terms, of each as they were applied to the Lessors' royalty payment.

8. The gross and net value of sales before and after deductions.

9. The owners' interests, expressed as a decimal, in sales from the lease, property, and individual wells.

10. The owners' share of the total value of sales before any deductions.

11. The owners' share of the sales value less deductions.

12. An address and telephone contact number where additional information may be obtained and questions answered. (If a royalty owner requests information via certified mail, a response must likewise be made by certified mail within thirty (30) days of receipt of the request.)

Sample royalty statement to follow.

**Lessee will provide copies of Marketing Agreements and/or Transportation Agreements or will provide access to them if requested by Lessor. Lessee will provide 24/7 secure web access to real-time gas flow meter reading.

## EXHIBIT "A"

{CLIENT FILES\17515\001\272547:}

**CAMERON QUADRANGLE**

SCALE 1" = 2000'

# TRANS ENERGY, INC.

**WELL: GOSHORN 1H**
**GOSHORN RIDGE LLC    937 ACRE LEASE**

LIBERTY DISTRICT    MARSHALL COUNTY    WEST VIRGINIA



## AMENDMENT #1 TO OIL AND GAS LEASE

This Amendment #1 to Oil and Gas Lease, executed this 28th day of November, 2011, by and among Goshorn Ridge, LLC, of 112 Algonquin Trace, Wheeling, West Virginia 26003 ("Lessor"), and Trans Energy, Inc., P.O. BOX 393, St. Marys, WV 26170 (50%) and Republic Energy Ventures LLC, 4925 Greenville Avenue, Suite 1050, Dallas, TX 75206 (50%), (collectively, "Lessee");

### WITNESSETH:

WHEREAS, Lessor executed an oil and gas lease dated November 11, 2010 ("Lease") with a Memorandum of Oil and Gas Lease recorded in Deed Book 723, Page 192, in the office of the Clerk of the County Commission of Marshall County, West Virginia; and

WHEREAS, paragraph number 24 of the Lease provides for, among other things, for Lessee to drill and complete two wells by December 31, 2011.

NOW, THEREFORE, Lessor, for good and valuable consideration of the sum of $15,000.00, the receipt and sufficiency of which is hereby acknowledged, including the mutual covenants set forth herein, Lessor and Lessee hereby agree to amend the Lease as follows:

Paragraph number 24 of the Lease reads, in part, as follows:

" * Lessee agrees to drill and complete two wells by December 31, 2011. Lessee will drill both wells back to back. Lessee hopes to drill these wells in the first quarter of 2011 with the Patterson Rig 163 but depending on timing (of signing, permitting, coal issues, pad site building) this might be delayed to the second or third quarter of 2011."

The above original paragraph 24 is hereby replaced in its entirety by the following:

" * Lessee agrees to drill (or be drilling the second well) two wells by December 31, 2011. Lessee shall complete the initial two wells as soon as reasonable practical but not later than March 31, 2012, unless otherwise extended in writing by the Lessor."

All other terms and conditions in the original oil and gas lease dated November 11, 2010, shall remain in full force and effect unless further amended in writing by the parties hereto.

WITNESS THE EXECUTION HEREOF, this 28th day of November, 2011.

_____
Robert C. Mead Sr.
Co-Manager of Goshorn Ridge, LLC

_____
Charles C. Hart
Co-Manager of Goshorn Ridge, LLC

REPUBLIC ENERGY VENTURES, LLC,
a Delaware limited liability company
By: Republic Energy Operating, LLC,
a Texas limited liability company

By: _____
Mark D. Woodburn, Its Attorney-in-Fact

TRANS ENERGY, INC.
By: _____
Mark D. Woodburn
Land Department Manager

STATE OF WEST VIRGINIA §
COUNTY OF MARSHALL §

TO-WIT: This instrument was acknowledged before me on the 28 day of November, 2011, by Robert C. Mead Sr., Co-Manager of Goshorn Ridge LLC.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
CRISTI A. WOJCIK
39 Dan Lee Drive
Wheeling, West Virginia 26003
My Commission Expires Apr. 13, 2019

_____
Notary Public
My Commission Expires: 4/13/2019

STATE OF Florida §
COUNTY OF Lee §

TO-WIT: This instrument was acknowledged before me on the 1st day of December, 2011, by Charles C. Hart, Co-Manager of Goshorn Ridge LLC.

_____
Notary Public
My Commission Expires: 4-19-15

SUSAN A. BOBACK
MY COMMISSION EXPIRES
April 19, 2015
#EE 075215
Bonded thru
Troy Fain Insurance
NOTARY PUBLIC STATE OF FLORIDA

STATE OF WEST VIRGINIA §
COUNTY OF PLEASANTS §

This instrument was acknowledged before me on the 7th day of December, 2011, by Mark D. Woodburn, the Land Department Manager of Trans Energy, Inc., a Nevada corporation, on behalf of such corporation and as Attorney-in-Fact for Republic Energy Ventures, LLC, a Delaware limited liability company, on behalf of such limited liability company.

_____
Notary Public
My Commission Expires: November 29, 2020

This document prepared by
And is to be returned to:

Trans Energy, Inc.
P.O. Box 393
St. Marys, WV. 26170



OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Debra A. Martin
Trans Energy Incorporated
210 2nd Street
St. Mary's, WV 26170
My Commission Expires Nov. 29, 2020

## LETTER AGREEMENT

This Letter Agreement, executed this __29__ day of March, 2013, by and among Goshorn Ridge, LLC, of 112 Algonquin Trace, Wheeling, West Virginia 26003 ("Lessor"), and American Shale Development, Inc., P.O. BOX 393, St. Marys, WV 26170 (50%) and Republic Energy Ventures LLC, 4925 Greenville Avenue, Suite 1050, Dallas, TX 75206 (50%), (collectively, "Lessee");

### WITNESSETH:

**WHEREAS**, Lessor executed an oil and gas lease dated November 11th, 2010 ("Lease"), such Memorandum of Oil and Gas Lease recorded at Book 723, Page 192 of the Real Property Records of Marshall County, West Virginia;

**WHEREAS**, paragraph number 24 of the Lease provides for, among other things, a drilling schedule and for Lessee to drill one well by June 30, 2013;

**WHEREAS**, paragraph 19 of the Lease pertains to the shut-in of a well(s);

**NOW, THEREFORE**, Lessor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including the mutual covenants set forth herein, Lessor and Lessee hereby agree as follows:

1) Lessee anticipates spudding the Goshorn #3H during the month of April 2013. It is Lessee's present intention to drill both the Goshorn #3H and Goshorn #4H back to back and then complete both wells. This process may go past June 30, 2013 and Lessor acknowledges this and Lessee shall complete its work as soon as reasonable practical.

2) Due to state requirements, best industry practices, and the overall safety and well being of everyone involved, Lessee will be shutting in the Goshorn #1H and Goshorn #2H during the preparation of and the drilling of the Goshorn #3H and Goshorn #4H.

Please acknowledge your agreement and understanding below.

Sincerely yours,

REPUBLIC ENERGY VENTURES, LLC,  
a Delaware limited liability company  
By:   Republic Energy Operating, LLC,  
        a Texas limited liability company

By: _____  
      John D. Swanson

AMERICAN SHALE DEVELOPMENT, INC.

By: _____  
      Brett C. Greene  
      Vice President, Land

ACHKNOWLEDGED and AGREED TO:

_____  
Robert C. Mead Sr.  
Co-Manager of Goshorn Ridge, LLC

_____  
Charles C. Hart  
Co-Manager of Goshorn Ridge, LLC

## AMENDMENT NO. 2 TO OIL AND GAS LEASE

THIS AMENDMENT NO. 2 TO OIL AND GAS LEASE, executed this ____ day of October, 2013, by and between GOSHORN RIDGE LLC of 112 Algonquin Trace, Wheeling, West Virginia 26003 ("Lessor") and AMERICAN SHALE DEVELOPMENT, INC., P.O. Box 393, St. Marys, West Virginia 26170 (50%) and REPUBLIC ENERGY VENTURES, LLC, 4925 Greenville Avenue, Suite 1050, Dallas, Texas 75206 (50%) (collectively "Lessee");

### WITNESSETH:

WHEREAS, Lessor executed an Oil and Gas Lease dated November 11, 2010 ("Lease"), a memorandum of which is recorded at Book 723, Page 192 of the Real Property Records of Marshall County, West Virginia; and

WHEREAS, the terms and provisions of said Lease have previously been amended by Amendment No. 1 to Oil and Gas Lease executed November 28, 2011, which is recorded at Book 754, Page 3 of the Real Property Records of Marshall County, West Virginia; and

WHEREAS, the third well drilled by Lessee pursuant to the Lease, being the Goshorn No. 3H Well, was spud on April 2, 2013;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including the mutual covenants set forth herein, Lessor and Lessee agree as follows:

1. The drilling schedule for the drilling and completion of Well No. 3 pursuant to the Lease as set forth in paragraph 24 of the Lease is extended beyond June 30, 2013, for so long as Lessee continues to prosecute the drilling and completion of such well (or abandonment if it is a dry hole) with due diligence until completion or abandonment, through fracturing and the resting period of approximately 90 days thereafter and provided that upon completion of drilling Well No. 3, Lessee will skid the drilling rig employed in the drilling of Well No. 3 over to promptly commence drilling of Well No. 4.

2. Inasmuch as the two wells previously drilled on the Lease (Goshorn No. 1H and Goshorn No. 2H) have been shut in for safety purposes and will continue to be shut in during the drilling and during fracturing of the Goshorn No. 3H and Goshorn No. 4H Wells, Lessor and Lessee agree that the Lease shall remain in full force and effect despite such well shut in and consequent cessation of production for such period of time as is necessary for safety purposes or through fracturing operation and thereafter during current or future drilling and completion operations on the lease.

Witness the execution hereof this ____ day of October, 2013.

**REPUBLIC ENERGY VENTURES LLC,**
a Delaware limited liability company

By:     **REPUBLIC ENERGY OPERATING, LLC,**
a Texas limited liability company

By: _____
John D. Swanson, President

**AMERICAN SHALE DEVELOPMENT, INC.**

By: _____
Brett C. Greene, Vice President, Land

**GOSHORN RIDGE, LLC**

By: /s/ R C Meade _____
Robert C. Meade, Sr., Co-Manager

By: _____
Charles C. Hart, Co-Manager