**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**WILLIAM D. GLOVER, LINDA K.
GLOVER, his wife; RICHARD A
GLOVER, CHRISTY L. GLOVER, his
wife; and GOSHORN RIDGE, LLC,
Individually, and on Behalf of All Others
Similarly Situated,**

        **Plaintiffs,**

**v.**

**EQT CORPORATION, a Pennsylvania
corporation; EQT PRODUCTION
COMPANY, a Pennsylvania corporation;
EQT ENERGY, LLC, a Delaware limited
liability company; EQT GATHERING,
LLC, a Delaware limited liability company;
and EQT MIDSTREAM PARTNERS, LP,
a Delaware limited partnership,**

        **Defendants.**

**CIVIL ACTION NO. 5:19CV223
(BAILEY)**

## <u>ORDER</u>

       Currently pending before the undersigned on referral from the District Court are two (2)

Motions to Compel, one filed by Defendants [ECF No. 119], and one filed by Plaintiffs [ECF No.

122].  Also pending are Defendants' Motion [124] to Strike and Defendants' Motion [126] to Stay.

These Motions have been fully briefed, and an Oral Argument/Evidentiary Hearing was held on

October 14, 2021.  After considering the parties' arguments, the applicable law, and the Court file,

the undersigned is prepared to issue decisions with respect to each of the aforementioned Motions.

# I.
## DEFENDANTS' MOTION [119] TO COMPEL PLAINTIFFS TO PRODUCE REQUESTED DISCOVERY ON ADEQUACY

### A. Factual/Procedural History

The discovery request at issue in this Motion is Defendant's Request for Production No. 1 in Defendants' Second Set of Interrogatories and Requests for Production and Requests for Admission on Adequacy. The particular RPD at issue states as follows:

REQUEST FOR PRODUCTION NO. 1:

Documents between any plaintiff in the *Huey* Litigation and Plaintiffs' Counsel, Mr. Marvin Masters, prior to certification of the class in the *Hamric[k]* Litigation, including, but not limited to, the following Communications:

(a) March 15, 2016 Correspondence from Marcus Huey to Marvin Masters;
(b) April 6, 2016 E-mail from Marcus Huey to Marvin Masters and Matt Perry;
(c) April 18, 2016 E-mail from Marcus Huey to Marvin Masters and Matt Perry;
(d) June 3, 2016 Correspondence from Marcus Huey to Marvin Masters; and
(e) June 15, 2016 E-mail from Marcus Huey to Marvin Masters (and others).

As was stated above, the Court conducted a hearing on this Motion on October 14, 2021. Following said hearing and on October 18, 2021, Plaintiffs filed a Motion for Leave to File Supplemental Response to EQT Defendants' Motion to Compel. ECF No. 144. Defendants filed a Response in Opposition on October 19, 2021. ECF No. 147. Plaintiffs' Motion for Leave was denied on October 20, 2021. ECF No. 148. Thereafter, the Court proceeded to consider the issues raised in Defendants' Motion. On October 22, 2021, the Court directed Plaintiffs to provide to the Court copies of the correspondence referenced in Defendants' RPD No. 1 for *in camera* review. These documents are identified in ECF No. 119-7 as follows: (1) PLTFs002135; (2) PLTFs002136; (3) PLTFs002137-PLTFs002138; (4) PLTFs002139; and (5) PLTFS 002140.

Starting on October 25, 2021 and continuing through October 27, 2021, the parties engaged in email communication with the Court, detailing further arguments vis-à-vis this issue. As part

and parcel of these email communications, Mr. Masters provided to the Court the following documents on October 26, 2021: (1) PLTFs002135; and (2) PLTFs002139. Plaintiffs advised the Court that they could not locate the following documents: (1) PLTFs002136; (2) PLTFs002137-002138; and (3) PLTFs002140. Plaintiffs did, however, locate other documents which appear to be communications between Plaintiffs' counsel and Mr. Huey dated April 9, 2016[1], April 11, 2016, December 6, 2016, and December 19, 2016. Plaintiffs provided those communications to the Court for *in camera* review, as well.

### B. Arguments of the Parties

Defendants argue that the discovery sought in RPD No. 1 is relevant and necessary to investigate the adequacy of Mr. Marvin Masters under Fed. R. Civ. P. 23(a)(4), and specifically his ability to adequately represent Plaintiffs in the instant litigation. In particular, Defendants contend that the requested discovery will demonstrate that Mr. Masters was on notice of an intra-class conflict in prior litigation in which he was involved against Defendants, but that he failed to take action with respect to the same. Defendants argue that these circumstances render Mr. Masters unfit to represent the current group of putative class Plaintiffs.

Plaintiffs object to this Request for Production and assert that the information sought within the subject RPD is irrelevant. Even if relevant, Plaintiffs contend that the documents requested are protected from disclosure by the attorney-client privilege and the work-product doctrine.

Defendants contend that the documents requested in RPD No. 1 are not and cannot be protected by the attorney-client privilege because the communications at issue allegedly occurred

---

[1] This is the date of the document labeled PLTFs002136 which Plaintiffs originally said they could not locate. When they stated that they could not locate the document, it was labeled as a document dated April 6, 2016. As there is no document dated April 6, 2016 in the privilege log (ECF No. 119-7), the Court believes April 6 is a typographical error/misunderstanding. In other words, it appears that Plaintiffs' Counsel has located the document labeled PLTFs002136 and dated April 9, 2016.

3

between Mr. Masters and putative class members in the *Hamrick*[2] Litigation prior to certification of the *Hamrick* class, and there is no attorney-client relationship before class certification.  For the reasons that follow, Defendants' argument is not persuasive.[3]

### C.  Discussion

Defendants cite, among other cases, *The Kay Company, LLC, et al. v. Equitable Productions Company, et al.*, 2:06-cv-0612, 246 F.R.D. 260 (S.D. W.Va. Sept. 21, 2007) in support of their position that the attorney-client privilege does not apply to communications between class counsel and putative class members prior to class certification.  In *The Kay Company,* plaintiffs filed a motion seeking to limit defendants' attorneys' direct communications with putative class members regarding potential settlement.  In advancing this motion, plaintiffs argued that these communications violated the Rules of Professional Ethics, and in particular Rule 4.2 which provides that the lawyer of a party shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer unless the lawyer has the consent of the other lawyer or is otherwise authorized by law.  *The Kay Company*, 246 F.R.D. at 263-64.  The Court found that the communications did not violate Rule 4.2 because no lawyer-client relationship exists between counsel and putative class members prior to class certification.  *Id.* at 264 (citing *State ex rel. Charleston Area Med. Ctr. V. Zakaib*, 190 W.Va. 186, 437 S.E.2d 759, 763-64 (1993) and ABA Comm. On Ethics and Prof's Responsibility, Formal Op. 07-445 (2007)).  This holding did not <u>completely</u> exclude, however, the possibility of an attorney-

---

[2] *The Kay Company, LLC, et al. v. EQT Production Company, et al.*, 1:13CV151.

[3] There are two parts to the discovery request at issue: the broad discovery request for "[d]ocuments between **any** plaintiff (emphasis added) in the *Huey* Litigation and Plaintiffs' Counsel, Mr. Marvin Masters, prior to certification of the class in the *Hamrick* Litigation," and the more specific request which includes the delineated documents in RPD No. 1.  The Court will address the broader request first, and then proceed to consider whether the individual documents should be produced.

client relationship between counsel and putative class members prior to class certification. Rather, it acknowledged that "those class members with whom the lawyer maintains a personal client-lawyer relationship are clients." *The Kay Company*, 246 F.R.D. at 264 (quoting Debra Lyn Bassett, *Pre-Certification Communication Ethics in Class Actions*, 36 GA. L. REV. 353, 353-54 (2002) and RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §99 cmt. 1 (2000)). This issue is therefore not as cut and dry as Defendants' believe. Rather, when assessing whether an attorney-client relationship exists between class counsel and a putative class member, consideration must be given to whether the lawyer maintains a personal client-lawyer relationship with the putative class member.

In its general request for documents, Defendants do not specifically identify those *Huey* Litigation plaintiffs for whom Defendants are seeking documents of communications with Marvin Masters. Because Defendants do not specifically identify these plaintiffs (other than Marcus Huey), the Court is unable to meaningfully consider whether and to what extent Mr. Masters may have had a personal attorney-client relationship with them prior to certification. It is certainly possible, as was the case with Marcus Huey, that any number of persons in the *Hamrick* putative class could have maintained or sought to maintain a personal client-lawyer relationship prior to certification with Mr. Masters beyond that relationship of simply class counsel and putative plaintiff. If that were the case, any communications between that putative plaintiff and Mr. Masters would likely be protected from disclosure by the attorney-client privilege, regardless of whether certification had occurred yet or not. At the very least, specific analysis of this issue would need to be conducted prior to ordering the disclosure of any such communications. Again, because Defendants failed to identify (other than Marcus Huey) the specific putative class member(s) to whom this request applies, the Court cannot engage in such analysis. As a result, the Court cannot

compel production of these documents insofar as they relate to "any" plaintiff in the *Huey* Litigation.

Turning to the specific documents identified in Defendants' RPD No. 1, and specifically in subparts (a) through (e) wherein Defendants seek communications between Marcus Huey and Marvin Masters, and with particular reference to the documents Mr. Masters provided to the Court for *in camera* review, the Court would find that these documents are protected from disclosure by the attorney-client privilege. Again, Defendants argue that these documents, i.e. Mr. Masters' communications with Marcus Huey, are not protected by the attorney-client privilege because, at the time of these communications, Marcus Huey was part of the putative class of plaintiffs in the *Hamrick* Litigation, and the class had not yet been certified. However, simply because Marcus Huey may have been a putative class member in the *Hamrick* Litigation at the time of these communications does not necessarily mean that these documents are discoverable. As *The Kay Company* acknowledged, those putative class members with whom a lawyer maintains a personal relationship are clients. Mr. Masters avers that he never represented Marcus Huey, which averment Defendants rely upon to further argue in support of their position.[4] This is of no moment here, however. A review of the documents at issue clearly and unequivocally demonstrates that Marcus Huey was communicating with Mr. Masters to secure Mr. Masters' personal representation. Communications such as these, which are made while attempting to secure representation, are also protected from disclosure by the attorney-client privilege. *See* Model Rules of Prof'l Conduct R. 1.18 (2020). *See also United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982).

---

[4] In other words, Defendants argue that because Mr. Masters did not maintain a client-relationship with Mr. Huey, any communications between them could not be protected by the attorney-client privilege.

> The classic test for application of the attorney-client privilege is set forth in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (Mass. 1950):  The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).  Here, the *United Shoe* factors are clearly met.  The communications reviewed by the Court make clear that Marcus Huey sought to become Mr. Masters' client.  In most, if not all the communications, Mr. Huey appears to have initiated the contact, and he requests that Mr. Masters consider representing him personally.  Marcus Huey made the subject communications to Mr. Masters, who is a member of the bar.  In connection with this communication, Mr. Masters appears to have been acting as a lawyer.  Further, the communications related to facts of which Mr. Masters was informed by Marcus Huey without the presence of strangers for the purpose of securing legal services and was not for the purpose of committing a crime or tort.  There is no evidence or indication that the privilege has been waived by Marcus Huey.

Defendants argue that disclosures to third parties render the attorney-client privilege, to the extent one exists, null and void.  None of the documents provided to the Court by Plaintiffs' counsel appears to have been disclosed to third-parties, however.  Indeed, according to the privilege log at ECF No. 119-7 and according to the documents themselves, the documents are communications between Marcus Huey and Mr. Masters or someone from his law firm.  Therefore, and inasmuch as there is no indication that the documents reviewed *in camera* were disclosed to

third parties, the Court finds that the attorney-client privilege has not been waived vis-à-vis the same.

Accordingly, and for all of the foregoing reasons, Plaintiffs' objection to producing the requested documents is sustained.  The documents reviewed by the Court *in camera* are protected from production by the attorney-client privilege.  In light of this ruling, the Court does not need to address and makes no finding regarding the issue of whether and to what extent these documents are relevant to the issue of adequacy.  Similarly, the Court does not need to address and makes no finding regarding whether and to what extent the work-product doctrine is applicable to these documents.  Finally, to the extent there are documents sought by Defendants' Motion to Compel, but which have not been located by Plaintiffs' counsel and provided to the Court, the Court makes no finding regarding the same.

## II.
## PLAINTIFFS' MOTION [122] TO COMPEL

Plaintiffs filed a Motion to Compel [ECF No. 122] on August 30, 2021.  In it, Plaintiffs take issue with Defendants' responses to Plaintiffs' First Set of Interrogatories and Request for Production of Documents served on March 11, 2021, arguing that Defendants have not provided full and complete responses to the aforementioned discovery requests.  Plaintiffs also take issue with Defendants' alleged failure to designate any witnesses to appear for 30(b)(6) depositions as noticed on or about July 7, 2021.  Plaintiffs seek an order compelling full and complete answers to their First Set of Interrogatories and Request for Production of Documents, and an Order compelling designation of 30(b)(6) witnesses.

Defendants maintain that they have answered Plaintiffs' First Set of Interrogatories and Request for Production of Documents to the best of their ability, and they have provided documents

in response, and continue to supplement their discovery responses.  Defendants also argue that they are working on answering Plaintiffs' request for 30(b)(6) depositions, which Defendants maintain were numerous, detailed, extensive, and not easily answered.

The parties argued this Motion at the October 14, 2021 hearing.  During that hearing, it became clear that many of the discovery issues raised in Plaintiffs' Motion could have and should have been addressed (and potentially resolved) during a meet and confer which is required under the applicable rules.  *See* Fed. R. Civ. P. 37(a)(1) and LR Civ P 37.02.  This did not occur.

Plaintiffs' Motion does not contain the requisite certification that the parties met and conferred in good faith regarding the issues raised in Plaintiffs' Motion prior to seeking Court intervention.  *See* Fed. R. Civ. P. 37(a)(1).  Notwithstanding, Plaintiffs maintain that a meet and confer did take place and point to the "Meet and Confer Outline" to substantiate this argument.  A closer look at the Meet and Confer Outline reveals, however, that Plaintiffs specifically designated that the Outline was not a formal meet and confer, but rather an informal request for information.  *See* ECF No. 129-2 ("Plaintiffs request defendants to do the following before we submit a formal meet and confer").

Plaintiffs further argue that a July 21, 2021 Zoom conference between counsel constitutes a meet and confer for purposes of the applicable rules.  *See* ECF No. 122 at p. 6.  The Court does not agree.  The paragraph on page 6 of Plaintiffs' brief in which Plaintiffs discuss the July 21, 2021 Zoom conference only mentions Defendants' document production as being discussed during this conference.  Plaintiffs do not set forth any time in which they met and conferred with Defendants in good faith regarding the numerous Interrogatories at issue in Plaintiffs' Motion, nor did Plaintiffs set forth any time in which they met and conferred with Defendants regarding any R.

9

30(b)(6) depositions.   The meet and confer requirement is not mentioned anywhere else in Plaintiffs' approximately 100 page Motion.

In further support of their argument that Plaintiffs fulfilled the meet and confer requirement, Plaintiffs submitted an affidavit of counsel Marvin Masters, Esq.  ECF No. 129-3.  A review of the affidavit demonstrates that it does not support Plaintiffs' position.  Rather, the affidavit shows that Plaintiffs made multiple demands of Defendants during the July 21, 2021 Zoom conference but does not indicate whether the parties addressed Defendants' objections to the requested discovery or any alleged deficiencies within Defendants' answers, including answers to requests for production and interrogatories.  Moreover, the Court would note that the affidavit details only a dispute over a timeline or a target date for production of documents sought by Plaintiffs.  Again, Plaintiffs' Motion is approximately 100 pages and includes arguments regarding hundreds of discovery requests.  These discovery requests include not only requests for production of documents, but also a myriad of interrogatories.  Plaintiffs' Motion also seeks an Order compelling Defendants to designate a 30(b)(6) representative for deposition.  However, it appears that the topic of R.30(b)(6) depositions was not discussed during a meet and confer prior to Plaintiffs filing the instant Motion.  To the extent that any of the issues raised in Plaintiffs' Motion were addressed during any meet and confer, it appears that they were not addressed with the clarity and specificity required as demonstrated by the length of Plaintiffs' Motion when compared to the Meet and Confer Outline, and when considering that the meet and confer on which Plaintiffs rely took place on one occasion.

The Court would also note that it encouraged the parties to conduct a meet and confer after the October 14, 2021 hearing and offered the Courtroom so that the parties could meet face to face

rather than conducting the meet and confer over the telephone.[5]  There is no evidence or indication that a substantive meet and confer conference took place on that date or at any time thereafter.[6]

The parties were required under the rules to meet and confer in good faith regarding these discovery disputes prior to seeking Court intervention.  Additionally, and given the breadth, scope, and complexity of this case and of the issues raised in Plaintiffs' lengthy Motion, a meaningful meet and confer session (or more than one) should have occurred prior to seeking Court intervention.  That was not done here.  Plaintiffs' Motion is therefore premature.  The parties should meaningfully meet and confer regarding all outstanding discovery issues identified in Plaintiffs' Motion.  The Motion may be re-filed only after this (or these) meeting(s), and only if appropriate under the applicable Court rules and Scheduling Order.  A certification that the parties met and conferred in good faith regarding all identified discovery issues must accompany any re-filed Motion.

To the extent Defendants argue that Plaintiffs' interrogatories should be limited to 25, the Court would find that this argument is without merit.  Rule 33 of the Federal Rules of Civil Procedure provides in relevant part as follows: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Fed. R. Civ. P. 33(a)(1).[7]  This is not the end of the inquiry, however.

"When a party is confronted with what it believes to be an excessive number of interrogatories, the appropriate course of action is to either move for a protective order before answering any interrogatories or answer up to the numerical limit and object to the remainder

---

[5] Representatives for Plaintiffs and Defendants were present in person during the October 14, 2021 hearing.
[6] Despite the parties' many emails to the Court since the hearing, there has been no mention of a meet and confer between counsel.
[7] LR Civ P 26.01(c) also provides that, unless otherwise ordered or stipulated, discovery under Fed. R. Civ. P. 26(b)(2)(A) shall be limited to (among other things) 25 written interrogatories, including all discrete subparts, per party.

without answering." *Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, 541 (E.D.N.C. Jan. 5, 2019) (internal quotations omitted).  "If a party, instead, decides to answer some or all of the allegedly excessive interrogatories, it waives its objection that the requesting party has violated Rule 33's limit on the number of interrogatories a party may serve." *Id.* (citing *Knit With v. Knitting Fever, Inc.*, 2010 WL 11474937, at *1, n.2 (E.D. Pa. Jan. 22, 2010) ("[n]otwithstanding [d]efendant's non-waiver statement, it remains established that if a party selectively answers interrogatories, it has waived its objections [under Rule 33(a)] as to the remaining interrogatories") and *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104-05 (W.D.N.C. 1993) (finding that answering interrogatories in excess of the numerical limit constituted a waiver of an argument based on the number of allowable interrogatories)).  Here, Defendants provided answers to interrogatories in excess of the 25-interrogatory limit.  Because Defendants did so, they have waived this objection to Plaintiffs' interrogatories.[8]

In so finding, the Court notes Defendants' reliance upon *Zurich Am. Ins. Co. v. Dove Enterprises, Inc.*, 2020 WL 4926160, at *2 (N.D. W.Va. Apr. 13, 2020) to support their argument on this point.  The Court has reviewed that opinion and is satisfied that the same is distinguishable from this matter on two important points.  First, in *Dove Enterprises*, the parties entered into a joint stipulation that they were to propound no more than 40 interrogatories during discovery.  That is not the case here.  As far as the Court can tell, neither party has agreed to limit the number of permissible interrogatories in this matter.  Second, the defendant in *Dove Enterprises* objected to each and every interrogatory propounded as being over the applicable limit of interrogatories and did not answer them in any way.  That is also not the case here.  In the instant case, Defendants

---

[8] This finding should not be construed as limiting the number of permissible interrogatories to 25, or altering any Court Order, stipulation, or other agreement with respect to the number of permissible interrogatories in this action.

asserted an objection to the interrogatories at issue but provided answers notwithstanding those objections.  As such, Defendants selectively answered interrogatories, which constitutes waiver of this objection.  *See Mondragon*, 329 F.R.D. at 541.  *See also Knit With*, 2010 WL 11474937, at *1.

## III.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, Defendants' Motion [119] to Compel should be and is hereby **DENIED**.  Additionally, Plaintiffs' Motion [122] to Compel should be and is hereby **DENIED WITHOUT PREJUDICE**.  Finally, and insofar as the Court has considered ECF Nos. 119 and 122, Defendants' Motion [124] to Strike is **DENIED AS MOOT**, and Defendants' Motion [126] to Stay is **DENIED AS MOOT**.

It is so **ORDERED**.

Any party may, within **FOURTEEN DAYS** of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such an Order.

The Court **DIRECTS** the Clerk of the Court to mail a copy of this Order to any *pro se* party by certified mail, return receipt requested, and to counsel of record herein.

Dated: 11/5/2021                    */s/ James P. Mazzone*

                                              JAMES P. MAZZONE
                                              UNITED STATES MAGISTRATE JUDGE

13